KENNETH C. FELDMAN, SB# 130699
  E-Mail: Ken.Feldman@lewisbrisbois.com
DAVID D. SAMANI, SB# 280179
  E-Mail: David.Samani@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants Barry B. Kaufman
and Law Offices Of Barry B. Kaufman

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ENGINEER.AI CORPORATION d/b/a BUILDER.AI, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BARRY B. KAUFMAN, an individual, and LAW OFFICES OF BARRY B. KAUFMAN, a California professional corporation,<br><br>Defendants. | Case No. 2:22-cv-03552-PA-KS<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      July 11, 2022<br>Time:      1:30 p.m.<br>Crtrm.:   9A<br><br>Judge:   Hon. Percy Anderson<br><br>[*Filed concurrently with (1) Declaration of Barry B. Kaufman; (2) Request for Judicial Notice; (3) Objections to Declaration of Andy Pham; (4) [Proposed] Order*]<br><br>Action Filed:      May 25, 2022<br>Trial Date:        None Set |

4884-4843-6774.1



## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................. 1

II.    STATEMENT OF FACTS .................................................................... 2

    A.    Background ................................................................................ 2

    B.    Plaintiff's Allegations .............................................................. 3

    C.    The At-Issue Communications Are All Connected to Litigation Activities and are Hotly Contested ........................................... 5

III.   THE REQUESTED INJUNCTION VIOLATES THE ANTI-INJUNCTION ACT ............................................................................ 6

IV.    THE REQUESTED INJUNCTION CONSTITUTES AN IMPERMISSIBLE PRIOR RESTRAINT ON SPEECH ........................ 7

V.     PLAINTIFF HAS NOT, AND CANNOT, ESTABLISH THE RIGHT TO AN INJUNCTION UNDER FED. R. CIV. PROC. 65 ..................... 10

    A.    Plaintiff Cannot Establish It Will Succeed On The Merits ............ 10

        1.    California's "litigation privilege" bars all of Plaintiff's claims ............................................................................. 10

        2.    Plaintiff has not established any actionable defamation ........... 14

            (a)    Plaintiff has not established that Defendants "published" any statements related to the Wall Street Journal article ........................................... 14

            (b)    The "Padilla Letter" is not defamatory as a matter of law ................................................................... 15

            (c)    Plaintiff has not made any attempt to establish actual malice ............................................................ 16

        3.    Plaintiff has not shown a probability of prevailing on its interference claims because Plaintiff has not shown any actual interference or loss of business opportunities ................. 17

    B.    Plaintiff Has Failed To Demonstrate Irreparable Harm .............. 19

    C.    Balancing The Equities Weighs In Defendants' Favor .............. 20

    D.    The Public Interest Always Favors Protecting First Amendment Rights ....................................................................................... 20

VI.    CONCLUSION ................................................................................... 21

4884-4843-6774.1

i

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Alexander v. United States,*
509 U.S. 544, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993) ................................. 8

*Arizona Dream Act Coal. v. Brewer,*
757 F.3d 1053 (9th Cir. 2014) ........................................................................... 19

*Atlantic Coast Line R. Co. v. Locomotive Engineers,*
398 U.S. 281, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970) ...................................... 6

*Bennett v. Medtronic, Inc.,*
285 F.3d 801 (9th Cir. 2002) .............................................................................. 7

*de Jesus Ortega Melendres v. Arpaio,*
695 F.3d 990 (9th Cir. 2012) ............................................................................ 20

*Doe v. Harris,*
772 F.3d 563 (9th Cir. 2014) ............................................................................ 20

*hiQ Labs, Inc. v. LinkedIn Corp.,*
31 F.4th 1180, 2022 U.S. App. LEXIS 10349 (9th Cir. 2022) .................. 19, 20

*Nebraska Press Ass'n v. Stuart,*
427 U.S. 539, 559, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976) ............................. 8

*New.net, Inc. v. Lavasoft,*
356 F. Supp. 2d 1071 (C.D. Cal. 2003)........................................................... 8, 9

*New York Times Co. v. United States,*
403 U.S. 713, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971) ..................................... 8

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.,*
944 F.2d 597 (9th Cir. 1991) ............................................................................ 19

*Sandpiper Vill. Condo Ass'n v. Louisiana-Pacific Corp.,*
428 F.3d 831 (9th Cir. 2005) .............................................................................. 6

*Smith v. Bayer Corp.,*
564 U.S. 299, 131 S. Ct. 2368, 180 L. Ed. 2d 341 (2011) ................................. 6

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ..................................................................... 20

*Winter v. NRDC, Inc.*,
  555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ........................... 10, 19, 20

## <u>CALIFORNIA CASES</u>

*Ampex Corp. v. Cargle*,
  128 Cal. App. 4th 1569 (Cal. Ct. App. 2005) ...................................... 16

*Asia Investment Co. v. Borowski*,
  133 Cal. App. 3d 832 (Cal. Ct. App. 1982) ......................................... 13

*Bergstein v. Stroock & Stroock & Lavan LLP*,
  236 Cal. App. 4th 793 (Cal. Ct. App. 2015) ........................................ 12

*Carver v. Bonds*,
  135 Cal. App. 4th 328 (Cal. Ct. App. 2005) ........................................ 16

*Doctors Co. Ins. Servs. v. Superior Court*,
  225 Cal. App. 3d 1284 (Cal. Ct. App. 1990) ....................................... 12

*Finton Construction, Inc. v. Bidna & Keys, APLC*,
  238 Cal. App. 4th 200 (Cal. Ct. App. 2015) ........................................ 13

*Franklin v. Dynamic Details, Inc.*,
  116 Cal. App. 4th 375 (Cal. Ct. App. 2004) ........................... 17, 18, 19

*Friedman v. Knecht*,
  248 Cal. App. 2d 455 (Cal. Ct. App. 1967) ......................................... 11

*Herterich v. Peltner*,
  20 Cal. App. 5th 1132 (Cal. Ct. App. 2018) ........................................ 12

*John Doe 2 v. Superior Court*,
  1 Cal. App. 5th 1300 (Cal. Ct. App. 2016) .......................................... 14

*Kenne v. Stennis*,
  230 Cal. App. 4th 953 (Cal. Ct. App. 2014) ........................................ 13

*Lerette v. Dean Witter Organization*,
  60 Cal. App. 3d 573 (Cal. Ct. App. 1976) ........................................... 12



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Martinelli v. International House USA*,
   161 Cal. App. 4th 1332 (Cal. Ct. App. 2008)........................................................16

*Matson v. Dvorak*,
   40 Cal. App. 4th 539 (Ct. Cal. App. 1995)....................................................14, 15

*O'Neil v. Cunningham*,
   118 Cal. App. 3d 466 (Cal. Ct. App. 1981).........................................................13

*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld*,
   18 Cal. App. 5th 95 (Cal. Ct. App. 2017).............................................................13

*PMC, Inc. v. Saban Entertainment, Inc.*,
   45 Cal. App. 4th 579 (Cal. Ct. App. 1996)..........................................................17

*Polygram Records, Inc. v. Superior Court*,
   170 Cal. App. 3d 543 (Cal. Ct. App. 1985).........................................................14

*Quelimane Co. v. Stewart Title Guaranty Co.*,
   19 Cal. 4th 26 (Cal. 1998) ....................................................................................17

*Reader's Digest Assn. v. Superior Court*,
   37 Cal. 3d 244 (Cal. Ct. App. 1984)....................................................................16

*Rubin v. Green*,
   4 Cal. 4th 1187 (Cal. 1993) ..................................................................................12

*Ruiz v. Harbor View Community Ass'n*,
   134 Cal. App. 4th 1456 (Cal. Ct. App. 2005)......................................................16

*Silberg v. Anderson*,
   50 Cal. 3d 205 (Cal. 1990) ...................................................................................11

*Smith v. Hatch*,
   271 Cal. App. 2d 39 (Cal. Ct. App. 1969)...........................................................12

*Stolz v. KSFM*,
   30 Cal. App. 4th 195 (Cal. Ct. App. 1994)..........................................................16

*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port
   Dist.*,
   106 Cal. App. 4th 1219 (Cal. Ct. App. 2003)......................................................17



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# **FEDERAL STATUTES**

28 U.S.C.
   § 2283 ...................................................................................1, 6, 7, 21

# **CALIFORNIA STATUTES**

Cal. Civ. Code
   § 47 ........................................................................................2, 10, 11

# **OTHER AUTHORITIES**

Fed. R. Civ. P. 65..............................................................................2, 21

U.S. Const. amend. I....................................................................2, 8, 16, 20

Case No. 2:22-cv-03552-PA-KS
OPPO. TO MTN FOR PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff ENGINEER.AI CORPORATION d/b/a BUILDER AI ("Plaintiff") seeks to enjoin its opposing counsel in a pending lawsuit, defendants BARRY B. KAUFMAN and LAW OFFICES OF BARRY B. KAUFMAN (collectively, "Kaufman" or "Defendants"), based on its objections with the manner in which Kaufman has litigated two "whistleblower" cases against it, one of which is on the eve of trial.  Prior to even serving either version of its complaint—which solely targets Kaufman's communicative conduct as adverse counsel—Plaintiff filed the present motion for preliminary injunction, which broadly seeks to enjoin Kaufman from representing his clients whose employment was wrongfully terminated in retaliation for exposing its unlawful and discriminatory conduct, claiming that Kaufman's acts constitute "defamation," "business disparagement" and/or "intentional interference."[1]

Plaintiff's motion for an injunction is fatally flawed on numerous grounds. <u>First</u>, because of the breadth of the requested injunction, Plaintiff's motion runs afoul of the Anti-Injunction Act, as the injunction would effectively enjoin the pending state court "whistleblower" action just as the trial is set to commence.  Plaintiff has not established any applicable exception to the Anti-Injunction Act that would allow for such extraordinary relief.

<u>Second</u>, Plaintiff's motion seeks an impermissible prior restraint.  Plaintiff seeks to enjoin Kaufman from engaging in protected speech well before any determination has been made regarding the merits of either the underlying "whistleblower" action or Plaintiff's claims of "defamation."  Once again, Plaintiff has not made any evidentiary showing that would justify such relief.

---

[1]    This lawsuit is a cut-and-dry strategic lawsuit against public participation ("SLAPP"), as will be demonstrated through Kaufman's forthcoming anti-SLAPP motion.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    <u>Third</u>, Plaintiff has not, and cannot, establish the requirements for a preliminary

2    injunction under Rule 65.  Plaintiff has <u>no</u> likelihood of success because California's

3    litigation privilege codified in Civil Code § 47(b) bars each and every one of its claims

4    in this action.  The only thing Plaintiff has sued Kaufman for is communicative

5    conduct in connection with or in anticipation of litigation.  The litigation privilege

6    serves as an absolute bar to these claims, regardless of Plaintiff's self-serving

7    allegations of falsity or other impropriety.  The litigation privilege is unyielding in

8    this regard.  Moreover, Plaintiff's operative complaint fails to establish the elements

9    of its claims for "defamation" or "intentional interference" as critical factual

10   requirements are missing from each claim for relief.

11   <u>Fourth</u>, Plaintiff has not demonstrated the requisite "irreparable harm."

12   Plaintiff asserts, in wholly conclusory fashion, only economic damage, and it is

13   axiomatic that monetary damages do not give rise to a right for injunctive relief.

14   <u>Finally</u>, and unsurprisingly given the above, neither the equities nor the public

15   interest support Plaintiff's request for relief.  Based entirely on bombastic and

16   conclusory allegations, Plaintiff asks this Court to infringe on Kaufman's First

17   Amendment rights as litigation counsel for his clients and to enjoin his efforts in the

18   pending case against Plaintiff to expose its unlawful employment practices and a

19   potential fraud on the market, the very issues about to be tried.

20   Plaintiff's request for relief is wholly unwarranted.  Accordingly, Kaufman

21   respectfully requests that the Court deny Plaintiff's motion for preliminary injunction.

22

23   **II.    STATEMENT OF FACTS**

24   **A.    Background**

25   Defendants are presently counsel for Joshua Joiner, Plaintiff's former

26   employee—and current litigation adversary—in a whistleblower and employment

27   discrimination lawsuit styled *Joiner v. Builder.ai Corp., et al.*, Los Angeles Superior

28   Court Case No. 20STCV21399 (the "*Joiner* Lawsuit").  (Declaration of Barry

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4884-4843-6774.1                                    2

Case No. 2:22-cv-03552-PA-KS
OPPO. TO MTN FOR PRELIMINARY INJUNCTION

Kaufman ("Kaufman Decl."), ¶¶ 4-5, 12-14, Exh. 3; see also Request for Judicial Notice ("RJN"), Exh. 11.)  Defendants also previously represented another client in a whistleblower action against Plaintiff styled *Holdheim v. Engineer.ai Corp.*, Los Angeles Superior Court Case No. 19STCV05103 (the "*Holdheim* Lawsuit"). (Kaufman Decl., Exh. 1; RJN, Exh. 12.)

The *Joiner* Lawsuit was scheduled to commence trial on March 14, 2022, but the trial date has been continued multiple times.  The parties are scheduled to report on June 27, 2022, at which time the Court is expected to announce a firm trial date. (See Kaufman Decl., ¶¶ 15-16; see also RJN, Exh. 11.)

The trial court in the *Joiner* Lawsuit has assessed several evidentiary and issue sanctions against Plaintiff based on its non-compliance with court orders concerning its statutory discovery obligations.  (See Kaufman Decl., ¶ 15, Exh. 5.)  The court's sanctions were not just monetary, but evidentiary as well including judicial determinations that (1) Plaintiff did not select Mr. Joiner for a layoff based on his work performance, that (2) Mr. Joiner had complained about unlawful activity to Plaintiff and its lawyer shortly before his employment was terminated, and that (3) Plaintiff "willfully withheld documents in discovery."  (*Id.*)

Among the matters at issue in the *Joiner* Lawsuit is whether Plaintiff discharged Joiner in retaliation for his disclosure to Plaintiff's lawyer defending the *Holdheim* Lawsuit that Plaintiff had falsely represented its technological capabilities with respect to its alleged development of "artificial intelligence" and machine learning to autonomously assemble software.  (Kaufman Decl., Exh. 3 at ¶¶ 8, 14-18.) Having worked as a technologist for Plaintiff, Mr. Joiner had personal knowledge that its technology claims were false.  (*Id.*)

### B.    Plaintiff's Allegations

Plaintiff contends that Kaufman, by virtue of his attorney services on behalf of Mr. Joiner and others seeking to prove unlawful conduct, has "defamed" it and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

engaged in a course of conduct that has allegedly diminished the value of its business. Essentially all of the at-issue conduct involves Kaufman's representative work on behalf of clients.  For instance, Plaintiff takes issue with a letter Kaufman sent to an investor seeking information in connection with the *Joiner* Lawsuit.  (FAC, ¶¶ 7, 20). Plaintiff also complains about an e-mail exchange wherein Kaufman requested information and documents and disclosed his intent to pursue such information from another investor if they refused to comply.  (FAC, ¶ 7).  Plaintiff also argues that Kaufman issued improper subpoenas in the *Joiner* Lawsuit.  (See FAC, ¶¶ 7, 21-22).

Plaintiff further contends that Kaufman "unethically" instructed Joiner and his wife to take notes of "attorney-client privileged discussions," and takes issue with his response on behalf of another former employee to whom a cease-and-desist letter was sent by Plaintiff's General Counsel, declarant Andy Pham.  (FAC, ¶¶ 7, 23-24.)

Plaintiff also contends that Kaufman "instigat[ed]" an article with the Wall Street Journal that Plaintiff portrays as an "expose," although notably Plaintiff does not actually allege Kaufman made any statement published in the article (or served as a source).  (FAC, ¶ 7.)  Rather, Plaintiff alleges that from the "wording used, the context, and the timing" of the article, it "appears" that the article's sources "are mostly made up of ex-employees of Builder," who were "aligned" with a client and/or were clients of Kaufman.  (FAC, ¶ 12.)[2]

Plaintiff also complains that the *Holdheim* Lawsuit and *Joiner* Lawsuit themselves lack merit (while admitting that it paid an undisclosed sum to settle the former case).  (FAC, ¶¶ 18-19.)  Plaintiff also alleges that Kaufman threatened to

---

[2]    Of note, Plaintiff appears to actually concede that the Wall Street Journal's conclusion—that it had not yet developed "artificial intelligence" to autonomously assemble software, but was instead outsourcing the work to software engineers it employed in India—is true, but instead argues that it has never claimed to have developed any such AI-based capability.  (FAC, ¶ 10.)  Through discovery, Kaufman has uncovered evidence proving that Plaintiff's CEO, Sachin Duggal, has publicly claimed on several occasions that he developed AI technologies that simply do not exist.  (Kaufman Decl., ¶¶ 23-25.)

pursue an "administrative remedy" during a deposition taken in the *Joiner* Lawsuit (albeit, without alleging what the threatened "administrative remedy" was or the context in which the alleged statement was made).  (FAC, ¶ 25.)

### C.     The At-Issue Communications Are All Connected to Litigation Activities and are Hotly Contested

As a preliminary matter, Defendants were did not communicate with the Wall Street Journal and were not a source of material for that article.  (Kaufman Decl., ¶¶ 19, 21-22.)   Neither did Defendants instruct Joiner or his wife to take notes of "attorney-client privileged discussions" (which the trial court in the Action previously ruled was not a "privileged" discussion as a matter of law).  (*Id.* at ¶¶ 36-37; Exh. 10.) The subpoenas that were issued by Kaufman were directed to third parties in possession of discoverable information relating to Joiner's damages, one of which the trial court enforced through the issuance of an OSC re: contempt to compel compliance and the other which the Court quashed as being served "too late" to obtain the sought-after information. (*Id.* at 29, 33-35; Exh. 8.)  Likewise, the Lakestar Letter involved Defendants' efforts to obtain information and discovery in connection with the *Joiner* Lawsuit, including documents that Plaintiff had been ordered to produce (but had not).  (Kaufman Decl., ¶¶ 26-28.)

Nevertheless, one of the central issues to be tried in the *Joiner* Lawsuit concerns whether Joiner is entitled to whistleblower protection for exposing that Plaintiff has committed "fraud on the market" by making false claims about its possession and use of "artificial intelligence" to create software.  (Kaufman Decl., ¶¶ 23-25.)   In this regard, Defendants maintain that all of the disputed statements at issue are *true*, and that those statements will be proven at the forthcoming trial in the *Joiner* Lawsuit which Plaintiff ostensibly seeks to enjoin from proceeding.  (*Id.*)

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## III. <u>THE REQUESTED INJUNCTION VIOLATES THE ANTI-INJUNCTION ACT</u>

As a preliminary matter, Plaintiff's moving papers are quite vague as to what, precisely, the Court is being asked to enjoin. Plaintiff's conclusion requests a "preliminary injunction against any further business disparagement or intentional interference." (Dkt. No. 14, at 11:10-12.) Considering that Plaintiff apparently views Kaufman's representative conduct on behalf of Joiner to constitute such harms, the injunction apparently seeks to preclude further litigation-related activities in the *Joiner* Lawsuit. Such a remedy is unlawful and prohibited under the Anti-Injunction Act codified at 28 U.S.C. § 2283.

Specifically, the Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* The Anti-Injunction Act's "core message is one of respect for state courts." *Smith v. Bayer Corp.*, 564 U.S. 299, 306, 131 S. Ct. 2368, 180 L. Ed. 2d 341 (2011). Moreover, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, 297, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970).[3]

The Anti-Injunction Act's mandate is "subject to only 'three specifically defined exceptions.'" *Smith*, 131 S. Ct. at 2375 (quoting *Atlantic Coast Line R. Co.*, 398 U.S. at 286). The three exceptions are injunctions that: (1) Congress has expressly authorized; (2) are necessary in aid of the federal court's jurisdiction; or (3)

---

[3] The overriding principle underlying the Anti-Injunction Act is that federal courts are to avoid unnecessary interference with state court proceedings. *Sandpiper Vill. Condo Ass'n v. Louisiana-Pacific Corp.*, 428 F.3d 831, 850-52 (9th Cir. 2005) (encouraging caution regarding the "highly intrusive remedy" of a federal court injunction in view of the "very principles of equity, comity, and federalism that undergird the Anti-Injunction Act") (internal quotation omitted).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

are necessary to protect or effectuate the federal court's judgments. *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 805 (9th Cir. 2002). "The Supreme Court has cautioned the exceptions are to be narrowly construed and 'should not be enlarged by loose statutory construction.'" (*Id.* (quoting *Atlantic Coast Line R. Co.*, 398 U.S. at 287).

Not surprisingly, Plaintiff's motion cites no specific statute that would authorize or warrant the requested injunction against Kaufman. In addition, the required third element—to protect or effectuate the federal court's judgment—is inapplicable because no federal court judgment is implicated here. All that is left is the second element, but the Anti-Injunction Act "creates a presumption in favor of permitting parallel actions in state and federal court." *Bennet*, 285 F.3d at 806. Consequently, "[p]arallel in personam actions in state court seriously impede a federal court's ability to adjudicate a case only where the state court proceeding threatens to 'render the exercise of the federal court's jurisdiction nugatory.'" *Id.* (quoting *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996)).

Here, Plaintiff has plainly failed to justify an injunction which has the effect of staying pending state court litigation. Nor can it. The outcome of the *Joiner* Lawsuit will not render the court's jurisdiction nugatory. No federal question is at issue in the state court proceeding. Plaintiff's claims for relief against Kaufman would still remain until the truth of the allegations are proven (at which time the claims for "defamation" and "business disparagement" will be negated by the jury's determination). Even if the jury were to find in favor of Plaintiff, its claims against Kaufman are still barred for the reasons set forth below.

## IV.  THE REQUESTED INJUNCTION CONSTITUTES AN IMPERMISSIBLE PRIOR RESTRAINT ON SPEECH

"The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993) (quotation omitted). "Temporary restraining orders and permanent injunctions — i.e., court orders that actually forbid speech activities — are classic examples of prior restraints." *Id.* "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976).

Consequently, there is a "heavy presumption against [a prior restraint's] constitutional validity." *New York Times Co. v. United States*, 403 U.S. 713, 714, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971). Allegations that the at-issue speech is false or will have harmful ramifications does not prevent the presumption from applying. *Id.* (denying injunction prohibiting publication of Pentagon Papers even in light of asserted threat to national security interests).

As the court in *New.net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1083 (C.D. Cal. 2003) noted:

> For more than thirty years, it has been established that allegations of falsity are insufficient to warrant prior restraint. Indeed, in a case involving an injunction against distributing leaflets criticizing respondent's business, the Supreme Court held:
>
> 'It is elementary, of course, that in a case of this kind the courts do not concern themselves with the truth or validity of the publication. Under *Near v. Minnesota*, the injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights . . . . No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  warrants use of the injunctive power of a court.'

2  (Quoting *Org. for a Better Austin v. Keefe,* 402 U.S. 415, 418-19, 91 S. Ct. 1575, 29

3  L. Ed. 2d 1 (1971).

4      Consequently, the *New.net, Inc.* court declined to entertain an injunction that

5  would constitute a prior restraint on a motion for preliminary injunction:

6      [T]he question of the *actual* truth or falsity of Lavasoft's

7      speech is not appropriate on this motion for *preliminary*

8      injunctive relief.  'A preliminary injunction is not a

9      preliminary adjudication on the merits, but a device for

10      preserving the status quo and preventing the irreparable loss

11      of rights before judgment.'  *Textile Unlimited, Inc. v.*

12      *A..BMH & CO.*, 240 F.3d 781, 786 (9th Cir. 2001).  The

13      Supreme Court has focused on this as a particular basis for

14      proscribing prior restraints, observing: ' [t]he special vice

15      of a prior restraint is that communication will be suppressed

16      . . . before an adequate determination that it is unprotected

17      by the First Amendment.'  *Pittsburgh Press Co. v.*

18      *Pittsburgh Comm'n on Human Relations*, 413 U.S. 376,

19      390, 37 L. Ed. 2d 669, 93 S. Ct. 2553 (1973).  In other

20      words, '[t]he danger of a prior restraint, as opposed to [an]

21      ex post . . . action, is precisely that making predictions ex

22      ante as to what restrictions on speech will ultimately be

23      found permissible is hazardous and may chill protected

24      speech.'  *Latino Officers Ass'n, New York, Inc. v. City of*

25      *New York*, 196 F.3d 458, 465 (2d Cir. 1999).

26  (345 F. Supp. 2d at 1083.)

27      The same reasoning and conclusion are directly applicable here.  Plaintiff asks

28  for a broad injunction prohibiting Kaufman from engaging in petitioning activity and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

speech on behalf of Defendants' client, where there has been no determination that any of the statements at issue are false.  (In fact, Defendants maintain that the statements made by Kaufman are 100% true.)  The Motion should be denied because it seeks to improperly impose a prior restraint on Defendants.

## V.    PLAINTIFF HAS NOT, AND CANNOT, ESTABLISH THE RIGHT TO AN INJUNCTION UNDER FED. R. CIV. PROC. 65

A preliminary injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).  "A plaintiff seeking preliminary injunctive relief must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.* at 20.

Here, Plaintiff cannot satisfy any of the elements it bears the burden of establishing in order to prevail on the merits.

### A.    Plaintiff Cannot Establish It Will Succeed On The Merits

#### 1.    California's "litigation privilege" bars all of Plaintiff's claims

California Civil Code § 47 provides that "[a] privileged publication or broadcast is one made: . . . .(b) In any . . . (2) [j]udicial proceeding. . . [and] (3) in any other official proceeding authorized by law . . . ."  Cal. Civ. Code § 47(b)(2), (3).

The California Supreme Court has held that this privilege is an *absolute* privilege, which immunizes litigants and their attorneys from <u>all causes of action</u> based on statements made during the course of protected proceedings, with the exception of malicious prosecution.

In furtherance of the public policy purposes it is designed to serve, the privilege described by § 47(2) has been given

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

broad application. Although originally enacted with reference to defamation (citations), the privilege is now held applicable to any communication, whether or not it amounts to a publication (citations), and all torts except malicious prosecution. (Citations.)

*Silberg v. Anderson*, 50 Cal. 3d 205, 211-212 (Cal. 1990).

In *Silberg,* plaintiff argued that the privilege should only apply to statements made in the furtherance of justice. The California Supreme Court rejected the application of an "interest of justice" test because such a test was "inconsistent with the absolute nature of the litigation privilege and its underlying policy purposes." *Id.* at 209. The *Silberg* decision discusses the important policy concerns furthered by the litigation privilege: "***[t]o effectuate its vital purposes, the litigation privilege is held to be absolute in nature***." *Id.* at 213-215, emphasis added.

In *Friedman v. Knecht*, 248 Cal. App. 2d 455 (Cal. Ct. App. 1967), the Court of Appeal held that any doubt as to the application of the privilege should be resolved in favor of the defendant.

***At all events, it is held that doubts are to be resolved in favor of relevancy and pertinency***; that is to say, the matter to which the privilege does not extend must be so palpably wanting in relation to the subject matter of the controversy that there can be no reasonable doubt of its impropriety. If the privilege is worth having, its purpose would be largely defeated if it were to vanish simply because one possible meaning of a statement made during judicial proceedings does not relate to them.

*Id.* at 544, emphasis added.

The courts have accordingly given broad application to the litigation privilege. "To be privileged under subdivision 2 of section 47, the defamatory matter need not

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

be relevant, pertinent or material to any issue before the court, it only need have *some* connection or *some* relation to the judicial proceeding." *Smith v. Hatch*, 271 Cal. App. 2d 39, 46 (Cal. Ct. App. 1969) (italics added). Along the same lines, in *Rubin v. Green*, 4 Cal. 4th 1187 (Cal. 1993), the California Supreme Court held:

> For well over a century, communications with 'some relation' to judicial proceedings have been ***absolutely immune from tort liability*** by the privilege codified as section 47 (b). At least since then-Justice Traynor's opinion in *Alberston v. Raboff* (1956) 46 Cal.2d 375, California courts have given the privilege an expansive reach. . . . In light of this extensive history, it is late in the day to contend that communications with 'some relation' to an anticipated lawsuit are not within the privilege.

*Id.* at 1193-1194 (emphasis added).

Indeed, the Court of Appeal recently reiterated that "the litigation privilege is **absolute**," applying even to "intentionally deceptive conduct before the courts . . . ." *Herterich v. Peltner*, 20 Cal. App. 5th 1132, 1142 (Cal. Ct. App. 2018) (emphasis added). Indeed, the litigation privilege is so broadly construed that it even bars a claim that an attorney attempted to suborn perjury. *Doctors Co. Ins. Servs. v. Superior Court*, 225 Cal. App. 3d 1284 (Cal. Ct. App. 1990).

Critically, even where statements are made outside of official proceedings, the statements are still protected by the litigation privilege so long as those statements have some connection or relation to the litigation process. See *Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 815 (Cal. Ct. App. 2015) (claim premised on assertion that "defendants solicited and used confidential information for the purpose of filing various actions against plaintiffs" barred by litigation privilege); *Lerette v. Dean Witter Organization*, 60 Cal. App. 3d 573, 575-577 (Cal. Ct. App. 1976) (a demand letter qualifies for the protection of the litigation privilege, as it is

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

"well established legal practice to communicate promptly with a potential adversary, setting out the claims made upon him, urging settlement, and warning of the alternative of judicial action").)[4]

Nor does alleged criminality matter. See *Finton Construction, Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 212-213 (Cal. Ct. App. 2015) (allegedly "stolen" confidential property transmitted by clients to attorneys in connection with litigation falls under the protection of the litigation privilege); *Kenne v. Stennis*, 230 Cal. App. 4th 953, 965 (Cal. Ct. App. 2014) ["The litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony'"]; *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld*, 18 Cal. App. 5th 95, 118-119 (Cal. Ct. App. 2017) (litigation privilege defeated claim of alleged conspiracy to convert funds).

Here, all of Plaintiff's claims are premised on Defendants' communicative conduct in connection with ongoing litigation. For instance, Plaintiff's claims are premised on *litigation procedures* taken in the *Joiner* Lawsuit, such as the issuance of subpoenas to third parties Carta and Insight Partners (see ¶¶ FAC, 21-22; FAC, Exh. 3, 5-6.) Plaintiff also asserts that the entire *Joiner* Lawsuit and the *Holdheim* Lawsuit are/were meritless (FAC, ¶¶ 17, 19), and contends the so-called Padilla letter, which is plainly a communication in anticipation of litigation threatened by Plaintiff, is "defamatory" (FAC, ¶ 23; Fac, Exh. 4.)

The allegedly defamatory Lakestar Letter, by its express terms, also constitutes a communication in connection with litigation. (FAC, ¶¶ 7, 20; FAC, Exh. 2.) The

---

[4]     Thus, an insurance defense counsel's reports to the insurer are protected by the privilege, even if the reports make false statements about the parties in the case. *O'Neil v. Cunningham*, 118 Cal. App. 3d 466, 475 (Cal. Ct. App. 1981); *see also Asia Investment Co. v. Borowski*, 133 Cal. App. 3d 832, 842 (Cal. Ct. App. 1982) ("The privilege attaches even though the publication was made outside a courtroom, as many portions of a 'judicial proceeding' occur outside of open court").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4884-4843-6774.1

13

Case No. 2:22-cv-03552-PA-KS
OPPO. TO MTN FOR PRELIMINARY INJUNCTION

letter makes direct reference to ongoing discovery procedures, requests the production of documents in lieu of having to serve a subpoena, and advises about the status of Joiner litigation.  (*Id.*)  Likewise, as to the Wall Street Journal article, as noted, Plaintiff does not actually allege or establish that Defendants are responsible for any of the statements published therein.  (FAC, ¶ 12.)  The only misconduct actually tied to Defendants in the FAC regarding the article is the fact that Defendants have "cited" it "in a number of different litigation claims."  (FAC, ¶ 16.)  This, too, is absolutely privileged.

### 2.    <u>Plaintiff has not established any actionable defamation</u>

The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.  *John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, 1312 (Cal. Ct. App. 2016).[5]

(a)    <u>Plaintiff has not established that Defendants "published" any statements related to the Wall Street Journal article</u>

"The general rule for defamation is that only one 'who takes a responsible part in the publication is liable for the defamation.'"  *Matson v. Dvorak*, 40 Cal. App. 4th 539, 549 (Ct. Cal. App. 1995).  Where a person has no control over a statement, and

---

[5]    The FAC also contains a claim for "business disparagement." California does not recognize a separate tort styled "business disparagement," though it does recognize a claim for relief for trade libel, which covers statements "disparaging of the quality of [a plaintiff's] business or goods," rather than those that "call into question the plaintiff's honesty, integrity or competence or reasonably imply any reprehensible personal characteristic."  *Polygram Records, Inc. v. Superior Court*, 170 Cal. App. 3d 543, 549-550 (Cal. Ct. App. 1985).  The tort substantially overlaps with defamation, but a plaintiff suing for trade libel must actually establish *pecuniary* damage and cannot rely on *per se* reputational damage.  *Id.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  has no knowledge of the preparation or content of a defamatory statement, there can
2  be no liability. *Id.*

3  Here, neither the FAC nor the Pham Declaration establishes that Defendants
4  actually made any statement or contributed in anyway to the Wall Street Journal
5  article. Rather, the FAC simply contends that from the "wording used, the context,
6  and the timing" of the article, it "appears" that the article's sources "are mostly made
7  up of ex-employees of Builder," who were "aligned" with a client and/or were clients
8  of Defendants. (FAC, ¶ 12.)

9  In reality, Defendants were not "sources" for the Wall Street Journal article.
10 (See Kaufman Decl., ¶¶ 21-22.) Obviously, the attorney-client privilege prohibits
11 Defendants from disclosing any communications they had with their clients, if any,
12 regarding the subject matter. However, deposition testimony from the *Holdheim*
13 Lawsuit in which Plaintiff was sued for retaliatory termination establishes that it knew
14 there were *other* whistleblowers who spoke to the Wall Street Journal about Plaintiff's
15 fraud on the market. No "defamation" action has ever been commenced against them
16 since individuals in contact with the media are also entitled to immunity for their
17 privileged communications. (See Kaufman Decl., ¶ 22.)

18 Yet even assuming *arguendo* that a client of Defendants served as a "source,"
19 it does not make Defendants liable for defamation absent evidence *Defendants*
20 *themselves* were responsible for the publication of defamatory statements. No such
21 evidence is alleged or offered.

22

23            (b)    The "Padilla Letter" is not defamatory as a matter of law

24 Another instance of "defamation" cited in the FAC is the so-called "Padilla
25 Letter," which consists of pre-litigation communications between Kaufman and
26 Plaintiff concerning a "cease and desist" threat made against one of his clients. (See
27 FAC, ¶ 7.)

28 By definition, this is not actionable defamation because defamation requires

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

publication to a *third party*. *Ruiz v. Harbor View Community Ass'n*, 134 Cal. App. 4th 1456, 1474 (Cal. Ct. App. 2005) (noting that "publication" means "communicated to a third person who understands its defamatory meaning"). Consequently, communications sent only to the Human Resources representative of Plaintiff [FAC, Exh. 4] are not deemed to be "published statements" and cannot give rise to liability for defamation. *See Martinelli v. International House USA*, 161 Cal. App. 4th 1332, 1337-1338 (Cal. Ct. App. 2008).

        (c)     <u>Plaintiff has not made any attempt to establish actual malice</u>

"In accommodation of First Amendment considerations (which are implicated by state defamation laws), where the plaintiff is a public figure, the public-figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation." *Stolz v. KSFM*, 30 Cal. App. 4th 195, 202 (Cal. Ct. App. 1994) (internal quotation marks omitted)) Further, "[i]f the person defamed is a public figure, he cannot recover unless he proves, by clear and convincing evidence, that the libelous statement was made with 'actual malice'--that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.*

A plaintiff may be a public figure either on an all-purpose basis, or a limited basis. *Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 252-254 (Cal. Ct. App. 1984). "Limited purpose public figures are those who invite attention and comment by thrust[ing] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Carver v. Bonds*, 135 Cal. App. 4th 328, 352 (Cal. Ct. App. 2005) (quotation marks omitted). A company that publicizes itself as an industry leader, or as developing cutting edge products or technology in its field, qualifies as a limited purpose public figure. *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577-1578 (Cal. Ct. App. 2005).

Here, Plaintiff positions itself as an industry leader in the use of "artificial

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4884-4843-6774.1
16
Case No. 2:22-cv-03552-PA-KS
OPPO. TO MTN FOR PRELIMINARY INJUNCTION

1 intelligence" in the development of software.    (See, e.g., RJN, Exh. 13.)
2 Consequently, it is a limited purpose public figure with regard to statements relating
3 to Plaintiff's technology and—as was/is at issue in the *Holdheim* Lawsuit and the
4 current *Joiner* Lawsuit—its ability to deliver on its various representations.  This, in
5 turn, requires Plaintiff to both prove actual falsity of any alleged defamatory statement
6 *and* actual malice on the part of Defendants.  Plaintiff has neither pled nor proven
7 either required element.

9    **3.    Plaintiff has not shown a probability of prevailing on its**
10    **interference claims because Plaintiff has not shown any**
11    **actual interference or loss of business opportunities**

12    "A cause of action for interference with contractual relations and a cause of
13 action for interference with prospective economic relations both require the plaintiff
14 to prove causation." *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 391
15 (Cal. Ct. App. 2004); accord *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.
16 4th 26, 55 (Cal. 1998) (noting that "actual breach or disruption of [a] contractual
17 relationship" as a result of the alleged interference" is a necessary element of
18 interference with contract); *PMC, Inc. v. Saban Entertainment, Inc.*, 45 Cal. App. 4th
19 579, 595 (Cal. Ct. App. 1996) (noting actual causation of damages is an element of
20 interference with prospective economic advantage).

21    Thus, in *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port
22 Dist.*, 106 Cal. App. 4th 1219 (Cal. Ct. App. 2003), the California Court of Appeal
23 affirmed the granting of an anti-SLAPP motion where the alleged interference—
24 discussions with another developer during an exclusivity period—when the
25 discussions did not actual cause a breach of contract.  *Id.* at 1240-1241.

26    Likewise, in *Franklin*, the California Court of Appeal affirmed the grant of
27 summary judgment where plaintiffs alleged that the defendant had sent defamatory e-
28 mails to the plaintiffs' clients and other business contacts, destroying the plaintiffs'

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

business. 116 Cal. App. 4th at 379-381. On appeal, after agreeing that the e-mails were, in fact, defamatory, the Court of Appeal nevertheless concluded that the plaintiffs' evidentiary submission (showing that, following the defamatory e-mails, plaintiffs' clients terminated their relationship) was not enough to be actionable. *Id.* at 393-394. The *Franklin* court rejected the plaintiffs' attempt to establish causation merely through an alleged decrease in sales following the defamatory e-mail, holding actual evidence linking the two was necessary:

> [Plaintiffs' evidence] attempts to establish causation through a temporal sequence: Because the e-mails preceded FCC's loss of MicroCraft's business, the e-mails caused the loss. A cause and effect relationship based upon such a temporal sequence is a classic example of the logical fallacy of post hoc, ergo propter hoc (literally, 'after this, therefore because of this'). [Citations]. With respect to causation, "[m]ore than post hoc, ergo propter hoc must be demonstrated." [Citations]. . . .
>
> Similarly, it is a false generalization to infer that because FCC lost MicroCraft's business after Axton's e-mails, the loss of business necessarily was an effect of the e-mails. Put another way, a trier of fact could not draw a reasonable inference that Axton's e-mails to Hidehira were a substantial factor in bringing about FCC's lost business merely because the e-mails preceded the loss. Franklin's declaration, as the other evidence Franklin and FCC relied upon to show causation, failed to present a causal nexus between Axton's e-mails and Franklin and FCC's loss of business from MicroCraft sufficient to create a triable issue of fact.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Case No. 2:22-cv-03552-PA-KS
OPPO. TO MTN FOR PRELIMINARY INJUNCTION

1    *Id.* at 393-94.

2    Here, Plaintiff's evidentiary submission fails to identify one instance where

3    Defendants' alleged conduct resulted in either (1) the termination or disruption of an

4    ongoing contractual relationship, or (2) the loss of a business expectancy.  Instead,

5    Plaintiff provide only the conclusory allegation that they have been damaged in

6    connection with a "Series C" pre-money valuation.  (FAC, ¶ 26.)  Plaintiff cannot

7    simply rely upon bald conclusions to establish a probability of prevailing.

8

9    **B.    Plaintiff Has Failed To Demonstrate Irreparable Harm**

10    "Irreparable harm is traditionally defined as harm for which there is no

11    adequate legal remedy."  *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068

12    (9th Cir. 2014).  In general, "economic injury alone does not support a finding of

13    irreparable harm, because such injury can be remedied by a damage award."  *Rent-A-*

14    *Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.

15    1991).  Likewise, even in instances where monetary damages may be insufficient, a

16    court should not issue a preliminary injunction where damages are speculative:

17              Issuing a preliminary injunction based only on a possibility

18              of irreparable harm is inconsistent with our characterization

19              of injunctive relief as an extraordinary remedy that may

20              only be awarded upon a clear showing that the plaintiff is

21              entitled to such relief.

22    *See Winter*, 555 U.S. at 22.

23    Here, Plaintiff has identified only economic damage as the so-called

24    "irreparable harm," claiming that its efforts to fundraise may be inhibited as a result

25    of Defendants' alleged conduct.  (Pham Decl., ¶ 22.)  But as Plaintiff's own cited

26    authority notes, "monetary damage is not normally considered irreparable."  *hiQ*

27    *Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 2022 U.S. App. LEXIS 10349 at *14 (9th

28    Cir. 2022) (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4884-4843-6774.1

19

1   634 F.2d 1197, 1202 (9th Cir. 1980)).

2       *hiQ Labs, Inc.* is further distinguishable because, in that case, the plaintiff

3   produced evidence demonstrating that the defendant intended to sever the plaintiff

4   from data that was vital to the plaintiff's continued operation of its business. 2022

5   U.S. App. LEXIS 10349 at *11-13, 14-16. Plaintiff, however, has not presented any

6   competent evidence demonstrating that Defendants' conduct represents an existential

7   threat to its business operations.

8

9     **C.**    **Balancing The Equities Weighs In Defendants' Favor**

10       A court must "balance the interests of all parties and weigh the damage to each"

11   in determining the balance of the equities. *Stormans, Inc. v. Selecky*, 586 F.3d 1109,

12   1138 (9th Cir. 2009). "In exercising their sound discretion, courts of equity should

13   pay particular regard for the public consequences in employing the extraordinary

14   remedy of injunction." *Winter*, 555 U.S. at 24.

15       Here, as noted above, the requested injunctive relief is a prior restraint affecting

16   Kaufman's First Amendment rights. The injunction would also materially inhibit

17   Kaufman's ability to act as an advocate for their client, Mr. Joiner, in the *Joiner*

18   Lawsuit. Against that, Plaintiff has presented only conclusory and speculative

19   assertions of alleged damage.

20

21     **D.**    **The Public Interest Always Favors Protecting First Amendment**

22          **Rights**

23       "[I]t is always in the public interest to prevent the violation of a party's

24   constitutional rights." *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th

25   Cir. 2012) (quoting *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974

26   (9th Cir. 2002)). Indeed, the Ninth Circuit has "consistently recognized the significant

27   public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d

28   563, 583 (9th Cir. 2014) (quoting *Sammartano*, 303 F.3d at 974)).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Here, as noted above, Plaintiff seeks to enact a prior restraint on Defendants
2  based solely on a conclusory declaration that largely parrots its Complaint and which
3  targets Kaufman's privileged conduct.  In doing so, Plaintiff seeks to effectively
4  enjoin an ongoing whistleblower lawsuit in which Plaintiff faces charges of
5  discriminatory practices and "fraud on the market."  Nothing about Plaintiff's
6  requested relief furthers the public interest.  The public interest is best served by
7  denying Plaintiff's ill-conceived motion.

8

9  **VI.**   **CONCLUSION**

10    As set forth above, Plaintiff's motion for preliminary injunction should be
11  denied.  The motion seeks to violate the Anti-Injunction Act and impose a prior
12  restraint, despite Plaintiff's inability to even establish the right to injunctive relief
13  under Rule 65.  Accordingly, Defendants respectfully request that the Court deny
14  Plaintiff's motion for preliminary injunction.

15

16  DATED:  June 27, 2022           LEWIS BRISBOIS BISGAARD & SMITH LLP

17

18

19                               By:      /s/ David D. Samani
20                                     DAVID D. SAMANI
                                      Attorneys for Defendants BARRY B.
21                                     KAUFMAN and LAW OFFICES OF
                                      BARRY B. KAUFMAN
22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW