KENNETH C. FELDMAN, SB# 130699
  E-Mail: Ken.Feldman@lewisbrisbois.com
DAVID D. SAMANI, SB# 280179
  E-Mail: David.Samani@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants Barry B. Kaufman
and Law Offices Of Barry B. Kaufman

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ENGINEER.AI CORPORATION d/b/a BUILDER.AI, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BARRY B. KAUFMAN, an individual, and LAW OFFICES OF BARRY B. KAUFMAN, a California professional corporation,<br><br>Defendants. | Case No. 2:22-cv-03552-SPG-KSx<br><br>**DECLARATION OF BARRY B. KAUFMAN IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CIV. PROC § 425.16**<br><br>Date: September 7, 2022<br>Time: 1:30 p.m.<br>Crtrm.: 5C<br><br>Judge: Hon. Sherilyn Peace Garnett<br><br>Action Filed: May 25, 2022<br>Trial Date: None Set |



4877-1270-9927.1

I, Barry B. Kaufman, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and am the principal defendant in the above-captioned "defamation" lawsuit filed by plaintiff Engineer.ai Corp. ("EAI").

2. I have personal knowledge of the facts set forth herein, and if called as a witness to testify thereto, I could competently and truthfully do so.

3. I make this declaration in support of the concurrently-filed Special Motion to Strike the First Amended Complaint (the "FAC") pursuant to Cal. Civ. Proc. § 425.16.

**OVERVIEW OF MY ROLE IN THE EAI LITIGATION**

4. The instant lawsuit filed by EAI against me and my professional corporation, Law Offices of Barry B. Kaufman APC ("LOBBK"), concerns my activities as opposing counsel in two litigations dating back to February 2019 (and as the lawyer for a former EAI employee to whom a "cease and desist" demand letter was sent after he posted a negative review of EAI on an online platform known as "Glassdoor").

5. The purpose of this declaration is to identify the relevant parties, to explain the history of the litigations against EAI in which I have served as the attorney of record for the plaintiff-employees, and to demonstrate how all of the facts cited in the original Complaint filed on May 25, 2022, the FAC and the Pham Decl. arise out of my work as the attorney-advocate for my clients whose interests were adverse to EAI (who was their former employer). Literally every allegation in the FAC and the Pham Decl. (a) concerns pleadings filed, statements made and/or writings prepared in connection with actual or threatened civil litigations against EAI, (b) relates to the substantive issues in those litigation matters and (c) was directed to persons having some interest in the litigations matters.

# THE *HOLDHEIM* LAWSUIT

6. I was originally introduced to EAI as the defendant-employer when I agreed to represent its former Chief Business Officer, Robert Holdheim, after he was fired for objecting to misrepresentations made by his superior, CEO Sachin Dev Duggal, concerning the state of EAI's claimed "artificial intelligence" (AI) technology. Mr. Holdheim, a business executive, had been actively recruited to relocate from Germany by Mr. Duggal to work by his side as EAI's #2 C-level executive to take it from just a "start-up" to an early-stage company and to relocate its principal place of business from San Francisco to Los Angeles.

7. In September 2018, after 3-4 months of employment, Mr. Holdheim confronted Mr. Duggal with his discovery of several troubling issues, most notably the fact that EAI had not yet actually developed any AI and that Mr. Duggal's claim he could autonomously assemble software with machines using AI was simply not true. Mr. Duggal dismissively replied, "every tech start-up exaggerates to get financing – it's the money that allows us to develop the technology." In subsequent litigation (discussed in the next paragraph), Mr. Holdheim asserted that after that discussion, Mr. Duggal essentially marginalized Mr. Holdheim and terminated him two months later on pretextual grounds.

8. A retaliatory termination lawsuit was then filed entitled <u>Holdheim v. Engineer.ai Corp., SD Squared North America Ltd., and DOES 1-50</u>, Los Angeles Superior Court Case No. 19STCV05103, assigned to the Hon. Elizabeth R. Feffer of Dept. 39 (hereafter, the "*Holdheim* Lawsuit"). The specific allegations of the *Holdheim* Lawsuit are documented in the Complaint filed on February 19, 2019, a true and correct copy of which is attached as **Exhibit 1** and incorporated herein by this reference. The *Holdheim* Lawsuit was aggressively litigated. Depositions were taken and I was eventually successful in obtaining a Court order compelling further production of documents from EAI, including documents concerning its so-called Builder® platform which supposedly was capable of autonomously assembling

software using machines and AI. A true and correct copy of the Notice of Ruling filed in the *Holdheim* Lawsuit reflecting the Court's order is attached as **Exhibit 2**. EAI never produced any of those documents despite the court's order.

## THE *HOLDHEIM* LAWSUIT SETTLES AFTER SERVICE OF A DEPOSITION SUBPOENA

9. In December 2019, I informed counsel for EAI in the *Holdheim* Lawsuit that I wanted to take the deposition of EAI's highest-ranking technology executive, Vice President of Engineering Alex Godelman, who had been identified in the deposition of its CEO Sachin Duggal as the "person most knowledgeable" about EAI's supposed development and use of artificial intelligence technology. Coincidentally, Mr. Godelman had been a former client of mine back in 2006 and I knew him to have been someone who would not lie under oath, so I believed he would be the best person to interrogate at EAI concerning whether EAI actually developed or possessed any AI technology capable of autonomously assembling software (which was one of the central issues in the *Holdheim* Lawsuit). Despite serving notice for the deposition of Mr. Godelman and having multiple conversations with EAI's counsel about same, Mr. Godelman was never produced for deposition (which led me to conclude either EAI was hiding Mr. Godelman or he declined to appear because he did not want to be blamed for exposing EAI's "dirty little secret" that it had not yet developed the AI technology that Mr. Duggal publicly claimed it had).

10. After several months, I asked EAI's counsel to instead produce (and ultimately subpoenaed) one of EAI's Senior Project Managers, Joshua Joiner, for deposition in lieu of Mr. Godelman. I had learned of Mr. Joiner at the September 30, 2019 deposition of Steven Choi, another former EAI employee who quit shortly after being hired in April 2019 upon discovering that EAI had misled him into accepting employment by misrepresenting that it had an AI capability. Unbeknownst to me at the time, Mr. Joiner was interviewed by EAI's counsel on April 23 and 24, 2020, in

anticipation of his deposition and disclosed to counsel that Mr. Holdheim's claims were true, including, without limitation, that EAI had not yet created the technology to autonomously assemble software through the use of AI.

11. Within two weeks of the date on which Mr. Joiner was interviewed, EAI agreed to settle the *Holdheim* Lawsuit. Little did I know at the time that service of the deposition subpoena on Mr. Joiner would have the impact that it did, both in terms of bringing a sudden change in EAI's settlement posture (culminating in a settlement)[1] and/or in terms of leading the termination of Mr. Joiner to prevent him from being deposed and revealing the truth behind EAI's "dirty little secret."

## THE *JOINER* LAWSUIT

12. On May 14, 2020, three weeks after Mr. Joiner was interviewed by EAI's counsel and confirmed the veracity of Mr. Holdheim's allegations, he was told that he was being "laid off" supposedly for "economic necessity" brought on by the Covid-19 pandemic. The propriety of that termination is the subject of the lawsuit currently is entitled <u>Joiner v. Builder.ai Corp., Engineer.ai Corp., Engineer.ai Global Limited, and DOES 1-50</u>, Los Angeles Superior Court., L.A.S.C. Case No. 20STCV21399, assigned to the Hon. Barbara Scheper of Dept. 30 (hereafter, the "*Joiner* Lawsuit"). The specific allegations of the *Joiner* Lawsuit are documented in the Complaint filed on June 5, 2020, a true and correct copy of which is attached as **Exhibit 3** and incorporated herein by this reference.

13. At the forthcoming trial, I anticipate the evidence will show that EAI's "economic necessity" justification for Mr. Joiner's lay off was false and pretextual as

---

[1] While the FAC repeatedly characterizes the *Holdheim* Lawsuit as "meritless" and asserts that Mr. Holdheim was offered a "separation package" that was "worth 4-8 times more than the settlement extracted by Mr. Kaufman," I have never seen any indication, in representing Mr. Holdheim, that EAI ever offered a separation package to Mr. Holdheim before he was terminated, let alone one worth $6.6 million to $13.2 million dollars (as EAI falsely alleges).

EAI received over $1,000,000 in Paycheck Protection Program (PPP) funding to cover EAI's payroll expenses for several months well before Mr. Joiner's May 14, 2020 termination. Discovery has further confirmed that, shortly after EAI "laid off" Mr. Joiner to "cut costs," it began an aggressive and expensive campaign in which it hired over 130 new employees in the matter of only a few months.

14. Moreover, while EAI refused to produce a "privilege log" evidencing communications about Mr. Joiner in the weeks after he was interviewed by its counsel in the *Holdheim* Lawsuit—despite a Court order dated May 27, 2021, compelling its production—I was able to obtain a "privilege log" from EAI's former counsel in the *Holdheim* Lawsuit by serving a subpoena on that law firm. A true and correct copy of that "privilege log" prepared in response to the subpoena served on EAI's former counsel, Jackson Lewis P.C., is attached as **Exhibit 4** and incorporated herein by this reference. The privilege log shows the close temporal proximity between the protected conduct of Mr. Joiner speaking with EAI's counsel and his selection for "lay off" three weeks later (as evidenced by the eighteen (18) communications specifically relating to Mr. Joiner).

## TRIAL IN THE *JOINER* LAWSUIT IS LOOMING

15. The original trial date of the *Joiner* Lawsuit was November 8, 2021, but was continued to March 14, 2022, after the trial court imposed a series of evidence preclusion sanctions against EAI for its failure to comply with its prior discovery order. A true and correct copy of the trial court's October 8, 2021 sanctions order is attached as **Exhibit 5** and incorporated herein by this reference. As the trial date approached, Plaintiff *waived* his right to a jury trial in an attempt to streamline the process and allow the presentation of evidence to be conducted remotely.

16. Given the trial court's sanctions order and its hope to exclude evidence of the "privilege log," EAI elected to try the case to a jury instead of to the Court and then delayed the commencement of the trial multiple times through various tactics,

including (a) failing to cooperate in the preparation and filing of required jury instructions, joint exhibit list, witness list and special verdict papers, (b) failing to exchange their trial exhibits in a timely manner and (c) asserting that EAI's trial counsel was unavailable in May and June 2022 due to other trial commitments. At the last Trial Status Conference held on Monday, June 27, 2022, EAI's trial counsel requested a two-week continuance because her mother was gravely ill and because she was by her bedside in North Carolina.  Thus, the commencement of trial in the *Joiner* Lawsuit is uncertain but is looming in the very near future.

## SUMMARY OF ACTS ABOUT WHICH EAI COMPLAINS

17. The charging allegations of the FAC consume 66 paragraphs over the span of twelve pages, but the acts and conduct which EAI alleges give rise to its claims are nicely summarized at in the "FACTUAL BACKGROUND" paragraph at pages 2-3 of the FAC, as follows:

> 7. Since 2019, Defendants have engaged in an intentional campaign to damage and devalue Builder's business. This campaign has included (a) instigating an August 14, 2019 article in the *Wall Street Journal* entitled "AI Startup Boom Raises Questions of Exaggerated Tech Savvy" ("the WSJ Article," Exhibit 1 herewith), (b) pursuing a meritless lawsuit filed in 2019 on behalf of Robert Holdheim ("the Holdheim Lawsuit"), (c) pursuing another meritless lawsuit filed in 2020 on behalf of Joshua Joiner ("the Joiner Lawsuit"), (d) sending a defamatory letter dated October 5, 2021 to EAI's investor Lakestar Advisors GmbH ("the Lakestar Letter," Exhibit 2 herewith); (e) serving an improper subpoena on Carta ("the Carta Subpoena," Exhibit 3 herewith) to obtain sensitive investor and

employee information; (f) sending a defamatory letter dated April 13, 2022 to EAI concerning Mr. Angel Padilla ("the Padilla Letter," <u>Exhibit 4</u> herewith); (g) unethically instructing Joshua Joiner and his wife to record or take notes on protected attorney-client privileged discussions after Defendants met with Joiner and established an improper attorney-client relationship; (h) misusing and misstating Utah law to threaten Builder and its employee with litigation; (i) threatening counsel with administrative proceedings to gain an unfair advantage during a civil dispute; (j) sending yet another extortionist demand letter, threating to contact Builder's most recent investor Insight Partners ("the Insight Letter," <u>Exhibit 5</u> herewith); and (k) issuing an irrelevant subpoena to Insight Partners ("the Insight Subpoena," <u>Exhibit 6</u> herewith).

18. On the face of these allegations, it is clear that everything that EAI alleges concerns or is directly related to my work as counsel for Mr. Holdheim in his litigation against EAI, or my work as counsel for Mr. Joiner in the case awaiting trial, or my work as counsel for former EAI employee Angel Padilla. The following paragraphs address each of the above-referenced allegations, explain what actually occurred. and demonstrates that EAI has alleged no facts to refute what is obvious on its face – that all such matters are protected litigation-related conduct.

## **<u>EAI'S "HIDE-AND-SEEK" DISCOVERY TACTICS AND THE WALL STREET JOURNAL ARTICLE</u>**

19. As noted above in Paragraph 6 and evidenced by the conformed filing stamp on Exhibit1 hereto, the *Holdheim* Litigation was filed by my client on February 19, 2019. Shortly thereafter, I substituted in as counsel of record and served

deposition notices and other written discovery. One of the central issues arising out of Mr. Holdheim's allegations concerned whether EAI was misrepresenting that it possessed AI technology that was capable of autonomously assembling software and apps when he believed it could not. See Exhibit 1 hereto, at ¶¶ 15 & pp. 15-19.

20. After EAI improvidently removed the *Holdheim* Lawsuit based on manufactured diversity grounds, I filed a Motion to Remand which, after full briefing, was granted by Order of the Hon. Philip S. Gutierrez dated June 5, 2019, a true and correct copy of which is attached as **Exhibit 6** and incorporated herein by this reference. In late June 2019, once back in State court, EAI responded to the written discovery I had served, but failed to produce a *single* document concerning the development status of its supposed AI technology, leading to tensions with EAI's litigation counsel and a subsequent discovery fight.

21. At or about this same time, I was contacted by EAI's General Counsel, Saul S. Rostamian, Esq., of Winston & Strawn LLP, who asked me to meet him for breakfast with my client. At that meeting, Mr. Rostamian disclosed that the press was investigating EAI on issues that closely tracked the allegations of the *Holdheim* Lawsuit and inquired whether my client or I had contacted the press (which we had not). Both Mr. Holdheim and I assured Mr. Rostamian that we were not behind any press leaks and had not been contacted, but that if we were contacted, we would not discuss the case or litigate it through the press. In response, Mr. Rostamian asked me if Mr. Holdheim would sign a letter stating that, at that time, he had "no evidence that EAI was exaggerating its AI technology." I told Mr. Rostamian that we were in the process of trying to obtain such evidence through proper discovery channels and that it would not be in Mr. Holdheim's best interests to sign such a letter. As it turned out, the Wall Street Journal published its exposé of EAI entitled "*AI Startup Boom Raises Questions of Exaggerated Tech Savvy*" [Exh. 1 to the FAC] on August 14, 2019, literally the day before I commenced the deposition of EAI's CEO, Sachin Duggal. That coincidental timing caused EAI to blame my client and me for the article.

22. However, the truth of the matter is that I never spoke with any reporter for the Wall Street Journal or any member of the press about the *Holdheim* Lawsuit. EAI's allegations that I "instigated" the Wall Street Journal article or supplied information to anyone associated with it are 100% false and surprising to me since the identity of at least one of the sources was disclosed in deposition of third party witness Steven Choi taken in the *Holdheim* Lawsuit on September 30, 2019, in response to questioning by EAI's counsel. I have personal knowledge that EAI thereafter prepared a draft complaint for "defamation" and threatened Mr. Choi in March 2020 for communicating with the Wall Street Journal article, but never did so before the statute of limitations on such a claim expired on October 1, 2020. Instead, EAI now feigns ignorance of Mr. Choi's sworn testimony and purports to sue me for "defamation" almost three years after the WSJ article was published.

## THE "DUGGAL NEVER SAID AI BUILT 80% OF THE APP" DISTORTION

23. It is unclear to me why EAI seeks to litigate the issues to be tried in the *Joiner* Lawsuit through its allegations against me in this "defamation" lawsuit, but in the FAC, it alleges that "Builder never asserted that it solely used AI to assemble direct codes for its apps" and that "the allegations made in Mr. Holdheim's lawsuit were false . . . [as] Mr. Duggal never told anyone during the relevant time that the platform was 80% built." FAC, at ¶¶ 10-11.

24. If a picture is worth a thousand words, a video must be worth more since Mr. Duggal publicly proclaimed at a tech conference held in September 2018 sponsored by BBC Click Live that he had created a technology where "82% of [an app] was built autonomously in the first hour" through the use of artificial intelligence. This video still appears on EAI's Facebook page and is accessible here: https://www.facebook.com/builderai/videos/33183563899818/.

/ / /

25. The pertinent discussion about EAI's supposed use of AI appears starting at 2:02 minutes into the video up to 4:22, and a transcription of what was said was verified for its accuracy by Mr. Duggal when I took his deposition on January 14, 2022. A true and correct copy of that transcription [marked as Exhibit "2" to the Duggal deposition] is attached hereto as **Exhibit 7** and incorporated herein by this reference. I have discovered several other video interviews of Mr. Duggal where he said similar things about EAI supposedly possessing AI technology which I believe it has yet to develop, and those videos will be used as evidence to expose the truth in the forthcoming trial of the *Joiner* Lawsuit. Thus, the allegations in the FAC concerning what AI technology EAI allegedly possesses and concerning Mr. Duggal's public statements are contradicted by other evidence obtained during the prosecution of the *Holdheim* Lawsuit and *Joiner* Lawsuit and goes to the heart of the potentially fraudulent conduct both plaintiffs have sought to expose in court.

## **THE LAKESTAR LETTER**

26. Next, the FAC alleges at Paragraphs 7 and 20 that I sent "a defamatory letter dated October 5, 2021 to EAI's investor Lakestar Advisors GmbH" (a copy of which is referred to as "the Lakestar Letter" and attached as Exhibit 2 to the FAC). The "Lakestar Letter" is the best evidence of its contents and speaks for itself, but all of the things I said in that letter are true and based on information I learned in my role as plaintiff's counsel in the *Holdheim* Lawsuit and *Joiner* Lawsuit.

27. In the so-called "Lakestar Letter," I wrote "I currently represent a 'whistleblower' named Joshua Joiner who is alleged to have been wrongfully terminated as a matter of California law," and state that "the evidence will show that [Mr. Joiner] was retaliated against by [Sachin] Duggal for complaining about [EAI's] efforts to mislead, if not defraud, its Board of Directors, investors, customers and the general public about technological and business capabilities that [EAI] supposedly possessed."

28. In the letter I asked Lakestar to voluntarily provide me with documents that EAI had been ordered by the Court the *Joiner* Lawsuit to produce, but had failed and refused to produce, and asked whether there were any "specific areas of inquiry that your General Counsel or senior management team would like me to ask Mr. Duggal for the benefit of Lakestar" when I took his deposition. I sent the "Lakestar Letter" as part of my past and continuing efforts to obtain information and documents that EAI had refused to disclose in discovery in both the Holdheim Lawsuit and, more recently, the *Joiner* Lawsuit (where the Court ordered EAI to produce the 80-100 page investor "slide deck" that it had given to Lakestar). I had no other purpose or intent in sending the "Lakestar Letter" other than as expressly stated therein, and at no time did I receive a response.

## **THE CARTA SUBPOENA**

29. Next, the FAC alleges at Paragraphs 7 that I *served* an "improper subpoena on Carta ('the Carta Subpoena,' Exhibit 3 herewith) to obtain sensitive investor and employee information." At Paragraph 21 EAI asserts "[t]he Carta Subpoena is improper because it allowed an invasion of Builder's confidential information including its investor information and employees with stock options." *What EAI neglects to inform the Court in its pleading is that EAI never objected to the Carta Subpoena after it was served in the Joiner Lawsuit by filing a motion to quash.* Nor does EAI disclose that, when Carta failed to comply, I (as plaintiff's counsel) applied for an Order to Show Cause re: Contempt which the trial court granted by Order dated April 4, 2022, a true and correct copy of which is attached hereto as **Exhibit 8** and incorporated herein by this reference. I believe the fact that the trial court enforced the subpoena refutes EAI's allegation that the "Carta Subpoena [was] improper." After the OSC was personally served in conformity with California law, Carta undertook efforts to fully comply with the Carta Subpoena and produced the requested documents, including EAI's capitalization table (referenced

as "investor information" in Paragraph 21 of the FAC). While the FAC ignores the issue, it is an undisputed fact that EAI (which is represented by multiple lawyers in the *Joiner* Lawsuit) never exercised any of its various legal remedies to try to block the Carta Subpoena or to limit/restrict Carta's duty to compliance with the trial court's order enforcing the Carta Subpoena.

### THE PADILLA LETTER

30. Next, EAI alleges at Paragraph 7 of the FAC that I sent "a defamatory letter dated April 13, 2022 to EAI concerning Mr. Angel Padilla ("the Padilla Letter," Exhibit 4 herewith)." At Paragraph 23 EAI further alleges that "The Padilla Letter is defamatory because it disparages EAI's management and alleges fraud along similar lines as the Lakestar Letter. Additionally, upon information and belief, Defendants allowed Mr. Padilla to 'stalk' online certain family members of one or more of EAI's employees. Defendants further misquoted and misused Utah law to attempt to obtain confidential information of EAI and to threaten EAI and its employees with administrative and/or civil actions. Upon information and belief, Defendants do not have a license to practice law in the State of Utah." EAI's reference to the "Padilla Letter" in the FAC is inaccurate because no letter was prepared or sent; rather, EAI appears to be referring to a series of e-mails I sent to EAI on behalf of Mr. Padilla between April 13, 2022 and April 22, 2022. Let me break this down the confusion sown by EAI in its self-serving allegations.

### FALSITY OF THE PADILLA LETTER ACCUSATIONS

31. *First*, just like the "Lakestar Letter" discussed above, the "Padilla Letter" is the best evidence of its contents and speaks for itself. *Second*, the Padilla Letter was a response to a "cease and desist" demand sent by EAI's General Counsel, Andy Pham (the same lawyer who has submitted a declaration in support of EAI's motion for preliminary injunction) in which he threatened to sue Mr. Padilla for posting a

negative review about EAI on the internet site "Glassdoor." See Exhibit 9, authenticated at Paragraph 32, *infra*. *Third*, the factual statements in the Padilla Letter are true and correct based on the information I had at the time it was sent to EAI and are still true and correct. *Fourth*, the "Padilla Letter" was sent to the Office Manager of EAI's Salt Lake City office where Mr. Padilla worked and was never published to any third party. *Fifth*, I cannot comment about EAI's allegation that I "allowed Mr. Padilla to 'stalk' online certain family members of one or more of EAI's employees" because I have absolutely no knowledge of what they are referring to, either from Mr. Padilla or EAI.

32. *Sixth*, the allegation that I "misquoted and misused Utah law to attempt to obtain confidential information of EAI" is non-sensical because all I did was to demand that EAI produce a copy of Mr. Padilla's personnel file which is statutorily allowed under Utah State Code § 67-18-1 just as it is allowed under California Labor Code § 1198.5(a). *Finally*, the very first line of the so-called "Padilla Letter" states "My name is Barry Kaufman and I have been retained by your former co-worker, Angel Padilla, in connection with his claims arising out of his former employment with Engineer.AI Corp., doing business as 'Builder.AI.'" That statement was obviously made to inform the reader that I was sending the e-mail as an attorney representing Mr. Padilla as a former EAI employee in connection with potential litigation, including the litigation threatened by EAI in Mr. Pham's "cease and desist" letter, a true and correct copy of which is attached hereto as hereto as **Exhibit 9** and incorporated herein by this reference.

### THE INSIGHT PARTNERS SUBPOENAS

33. Next, EAI alleges at Paragraphs 7 and 21 of the FAC that I sent "yet another extortionist demand letter, threating to contact Builder's most recent investor Insight Partners ('the Insight Letter,' Exhibit 5 herewith)" and "issuing an irrelevant subpoena to Insight Partners ('the Insight Subpoena,' Exhibit 6 herewith)."

34. At the risk of repetition, these documents are the best evidence of their contents and speaks for themselves, but all of the things I said in the "Insight Letter" were true and based on information I learned in my role as plaintiff's counsel in the *Joiner* Lawsuit. Just as I said in the letter to Lakestar sent in October 2021 and in my April 2022 e-mail responding on behalf of Mr. Padilla, I advised Insight Partners in the "Insight Letter" that I was "a labor and employment law attorney in Los Angeles" who represented Mr. Joiner in a pending litigation against EAI and offered to speak with them in the even "my suspicions are correct and the Joiner lawsuit was *not* fully disclosed to Insight Partners before its investment …." See Exhibit 5 to the FAC (emphasis in original).

35. The "Insight Subpoenas" were served because EAI and Insight Partners both posted a press release announcing a $100 million Series C round of investment in EAI, and I sought to compel one or more representatives of the company to testify and produce documents concerning whatever EAI represented about its supposed AI technology, including documents the trial court had ordered EAI to produce (but it never did). Insight Partners then specially-appeared and filed a Motion to Quash the Insight Subpoenas contending that it was just an uninvolved third party with no personal knowledge of the issues to be litigated in the *Joiner* Lawsuit. To my disappointment, the Motion to Quash was granted by the trial court on June 17, 2022, the Court commenting that "It's too late, Mr. Kaufman. It's too late." I am presently researching the viability of appealing said order because trial subpoenas can be served at any time and, in my opinion, the trial court's ruling denies Mr. Joiner access to newly-discovered evidence which may support his liability and damages claims against EAI. Nonetheless, both the "Insight Letter" and the "Insight Subpoenas" were prepared and served as part of my past and continuing efforts to prosecute the *Joiner* Lawsuit. I had no other purpose or intent in sending these documents other than as expressly stated therein.

/ / /

# THE "UNETHICAL INSTRUCTION" ALLEGATION

36. Next, EAI alleges at Paragraph 7 of the FAC that I "unethically instruct[ed] Joshua Joiner and his wife to record or take notes on protected attorney-client privileged discussions after Defendants met with Joiner and established an improper (sic) attorney-client relationship." This is argumentative nonsense that has already been raised as an argument by EAI in the *Joiner* Lawsuit and rejected by the court in that action. When Mr. Joiner was contacted by EAI's counsel in April 2020 to be interviewed in anticipation of his deposition, Mr. Joiner wisely sought legal counsel to obtain advice about his rights under those uncomfortable circumstances. Mr. Joiner was advised that EAI's counsel would only protect EAI, not him, and was instructed to have his wife take notes of the conversation as the interview was being conducted by Zoom from his home shortly after the Los Angeles County lockdown order had been issued as a consequence of the Covid-19 pandemic.

37. To be clear, I was counsel for Robert Holdheim, the party *seeking to depose* Mr. Joiner at the time he was interviewed by EAI's attorneys, and it is an absolute falsehood for EAI to allege that I communicated or "instructed" Mr. Joiner to take notes when I did not even represent him then. EAI asked Mr. Joiner about this same issue when it took his deposition in the pending *Joiner* Lawsuit and learned the true facts directly from Mr. Joiner, including the fact that when he was served with the deposition subpoena for a second time, he called me and I told him to talk with EAI's counsel because I could not speak with him. That fact is even documented in an e-mail Mr. Joiner sent to EAI's counsel that was produced in the *Joiner* Lawsuit as "Joiner 00108-108." Yet, EAI alleges a false story in its FAC contrary to the facts about which it is fully aware. Adding insult to injury, EAI neglects to mention that it sought a judicial determination that the April 24, 2020 interview of Mr. Joiner was a "protected attorney-client privileged discussion," but that contention was summarily <u>rejected</u> by the trial court when it denied Defendants' motions *in limine* Nos. 13 & 21 seeking to bar evidence of the Joiner interview and of Mr. Joiner's wife's notes. At

pages 44-45 of the official transcript of the March 14, 2022 hearing, the Court explained its reasoning:

> So, with respect to [MIL] number 13, counsel, it seems clear to me that clearly <u>there was no personal attorney-client relationship that was established between Mr. Joiner and the attorney who was interviewing him</u>.

(Emphasis added.) The trial court then cited the California Supreme Court's decision in *D.I. Chadbourne v. Superior Court* (1964) 60 Cal.2d 723, 737-738 to explain the basis for its order rejecting the "privilege" argument advanced by EAI:

> 'In all corporate employer-employee situations, it must be borne in mind that it is the intent of the person from whom the information emanates that originally governs its confidentiality (and hence its privilege); thus where the employee who has not been expressly directed by his employer to make a statement, and does not know that his statement is sought on a confidential basis . . ., the intent of the party receiving and transmitting that statement cannot control the question of privilege.'
> There is absolutely no evidence that Mr. Joiner was instructed to give information to counsel, that he was given the *Upjohn* warnings with respect to the nature of communication, and the fact that it was intended to be confidential."

38. Attached hereto as **Exhibit 10** and incorporated herein by this reference is a true and correct copy of the pertinent pages from Certified Reporter's Transcript of the March 14, 2022 hearing at which the Court <u>rejected</u> EAI's contention that the interview between its counsel and Mr. Joiner was a "protected attorney-client privileged discussion."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on this July 1, 2022, at Encino, California.

_____
Barry B. Kaufman