1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10
11   ENGINEER.AI CORPORATION,                Case No. 2:22-cv-03552-SPG-KS
12                         Plaintiff,        **ORDER DENYING PLAINTIFF'S**
                                             **MOTION FOR PRELIMINARY**
13          v.                               **INJUNCTION AND GRANTING**
                                             **DEFENDANTS' MOTION TO STRIKE**
14   BARRY B. KAUFMAN, et al.,               **[ECF NOS. 14, 26]**
15                         Defendants.
16
17

18          Plaintiff Engineer.AI Corporation's ("Plaintiff") has moved for a preliminary

19   injunction to prevent Defendants Barry B. Kaufman and the Law Offices of Barry B.

20   Kaufman ("Defendants") from engaging in business disparagement or intentional

21   interference. (ECF No. 14 ("PI Motion")). Defendants have moved to strike Plaintiff's

22   complaint pursuant to California's anti-SLAPP statute. (ECF No. 26 ("Strike Motion")).

23   A consolidated hearing for both motions was scheduled for September 7, 2022. Having

24   considered the submissions of the parties, the relevant law, and the record in this case, the

25   Court finds this matter appropriate for decision without a hearing. *See* Fed. R. Civ. P.

26   78(b); Central District of California Local Rule 7-15. The Court hereby DENIES

27   Plaintiff's motion for a preliminary injunction and GRANTS Defendants' motion to strike

28   the complaint.

## I.     BACKGROUND

### A.     Factual Background

Plaintiff is a technology company that allegedly uses artificial intelligence to build apps efficiently. (ECF No. 11 ("FAC") ¶ 8). Defendants Barry Kaufman and his law office have represented a number of Plaintiff's former-employees in lawsuits and potential lawsuits against Plaintiff.[1] (FAC ¶ 7). In particular, Defendants represented Robert Holdheim, Plaintiff's former Chief Business Officer, in a retaliatory termination lawsuit filed on February 19, 2019, in Los Angeles County Superior Court. (ECF No. 21 ("Kaufman Decl.") ¶¶ 6-8). Defendants currently represent Joshua Joiner, one of Plaintiff's former Senior Project Managers, in a wrongful termination lawsuit filed on June 5, 2020, in Los Angeles County Superior Court. (*Id.* ¶¶ 10, 12, 15, 16). Defendants also represent Plaintiff's former employee, Angel Padilla, in connection with his termination and responding to a "cease and desist" letter sent by Plaintiff. (*Id.* ¶¶ 30-32).

This lawsuit stems from Plaintiff's allegations that Defendants have engaged in an intentional campaign to damage Plaintiff's business. (FAC ¶ 7). Namely, Plaintiff alleges that Defendants: (a) instigated an article in the Wall Street Journal published on August 14, 2019, entitled "AI Startup Boom Raises Questions of Exaggerated Tech Savvy" ("the WSJ Article"); (b) pursued a meritless lawsuit filed in 2019 on behalf of Mr. Holdheim (the "Holdheim Lawsuit"); (c) pursued a meritless lawsuit filed in 2020 on behalf of Mr. Joiner (the "Joiner Lawsuit"); (d) sent a defamatory letter on October 5, 2021 to Plaintiff's investor, Lakestar Advisors GmbH (the "Lakestar Letter"); (e) served an improper subpoena on Carta (the "Carta Subpoena"); (f) sent a defamatory letter on April 13, 2022 to Plaintiff concerning Mr. Padilla (the "Padilla Letter"); (g) unethically instructed Joiner

---

[1] The Court grants the parties' respective requests to take judicial notice of state court filings from the various litigations. (ECF Nos. 22, 28). *See* Federal Rules of Evidence 201; *see also Reyna Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that it is appropriate to take judicial notice of court filings and other matters of public record such as pleadings, briefs, memoranda, motions, and transcripts filed in the underlying and related litigation).

and his wife to record or take notes on protected attorney-client privileged discussions with Plaintiff's corporate counsel; (h) misused and misstated Utah law to threaten Plaintiff and its employee with litigation; (i) threatened counsel with administrative proceedings to gain an unfair advantage during a civil dispute; (j) sent an extortionist demand letter threating to contact Plaintiff's most recent investor Insight Partners (the "Insight Letter"); and (k) issued an irrelevant subpoena to Insight Partners (the "Insight Subpoena") (hereinafter collectively referred to as, "Defendants' Communications"). (FAC ¶ 7).

### B.   Procedural History

Plaintiff commenced this action on May 25, 2022, (ECF No. 1), and filed the operative first amended complaint on June 10, 2022. (ECF No. 11). Plaintiff alleges four causes of action against Defendants: (1) defamation, (2) business disparagement, (3) intentional interference with contractual relations, and (4) intentional interference with prospective advantage. (FAC ¶¶ 28-66).

On June 13, 2022, Plaintiff filed a motion for a preliminary injunction. (ECF No. 14). In support thereof, Plaintiff submitted a declaration from its general counsel, Andy Pham. (ECF No. 14-1 ("Pham Declaration").[2] Defendants filed an opposition on June 26, 2022, (ECF No. 20), and submitted a declaration from Defendant Barry Kaufman (ECF No. 21). Plaintiff did not file a reply. Instead, on August 24, 2022, Plaintiff filed a request to cross-examine declarant Barry Kaufman pursuant to Local Rule 7-8. (ECF No. 36). On August 26, 2022, Defendant timely objected. (ECF No. 37).

---

[2] Defendants submitted numerous evidentiary objections to the Pham Declaration. (ECF No. 23). The Court notes that "the Federal Rules of Evidence do not strictly apply to preliminary injunction proceedings." *Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 966 (C.D. Cal. 2016) (evidentiary issues in this context go to the weight of the evidence rather than its admissibility), *aff'd*, 869 F.3d 848 (9th Cir. 2017); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"). Nevertheless, because the Court does not rely on the Pham Declaration in reaching its decision, the Court denies Defendants' objections as moot.

On July 1, 2022, Defendant filed a motion to strike Plaintiff's FAC pursuant to California Code of Civil Procedure section 425.16.  (ECF No. 26).  Plaintiff opposed on August 17, 2022, (ECF No. 34), and Defendant filed a reply on August 24, 2022.  (ECF No. 35).  The Court took the motions under submission without oral argument on September 6, 2022.  (ECF No. 38).

## II.  PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### A.  Legal Standard

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quotation omitted).  *See also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").  The party seeking a preliminary injunction "must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20.  The moving party bears the burden of meeting all four elements of the *Winter* test.  *See HiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022); *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011).

A preliminary injunction can take two forms.  "A mandatory injunction orders a responsible party to take action, while [a] prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (internal quotation marks and citation omitted).  In general, mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal citations omitted); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("[M]andatory injunctions should not issue in doubtful cases.") (internal quotation

omitted). Thus, for a mandatory injunction, a plaintiff "must establish that the law and facts *clearly favor* her position"; whereas for a prohibitory injunction, a plaintiff must simply demonstrate "that she is likely to succeed." *Id.*

**B.    Analysis**

Plaintiff seeks a "preliminary injunction against any further business disparagement or intentional interference by Defendants." (PI Motion at 11). Such a request could be construed as imposing affirmative obligations on Defendants, *i.e.*, to drop the Holdheim Lawsuit and Joiner Lawsuit. However, because neither party raised this issue in their papers, and because the Court finds that Plaintiff has not satisfied the *Winter* test under either standard, the Court need not decide whether the requested injunction is mandatory or prohibitive.

1.    <u>Likelihood of Success on the Merits</u>

The Ninth Circuit has held that the first *Winter* factor—likely success on the merits—is the "most important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Because the first factor "is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, [the court] need not consider the remaining three *Winter* elements." *Id.* (internal citations omitted). Here, Plaintiff cannot establish it is likely to prevail on any of its claims, as it must for the Court to issue a preliminary injunction, because Plaintiff's claims are either barred by the litigation privilege or fail to state a claim.[3] *See Flatley v. Mauro*, 39 Cal. 4th 299, 322 (2006) (the litigation privilege "bars all tort causes of action except a claim of malicious prosecution.").

---

[3] Plaintiff cites *Arsenal, Inc. v. Neal*, No. 2:11-cv-01628-KJD-CWH, 2013 WL 2405289 (D. Nev. May 31, 2013) and *HiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) in support of its request for a preliminary injunction. (PI Motion at 8). However, both *Arsenal* and *HiQ* are inapposite to the facts of this case because neither considers the issue of litigation privilege in deciding whether to issue preliminary injunctions. Plaintiff did not reply to Defendants' opposition, which argued that all of Plaintiff's claims are barred by California's litigation privilege.

1

a)    *Litigation Privilege*

2     California's litigation privilege, codified at California Civil Code section 47(b),

3    "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by

4    litigants or other participants authorized by law; (3) to achieve the objects of the litigation;

5    and (4) that have some connection or logical relation to the action." *Rusheen v. Cohen*, 37

6    Cal. 4th 1048, 1057 (2006) (citations omitted). "Thus, communications with some relation

7    to judicial proceedings are absolutely immune from tort liability by the litigation privilege."

8    *Id*. (citations and quotations omitted). The privilege "is not limited to statements made

9    during a trial or other proceedings, but may extend to steps taken prior thereto, or

10    afterwards." *Id*. (citations and quotations omitted). The privilege also extends to

11    qualifying publications "made outside the courtroom" even if "no function of the court or

12    its officers is involved." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). The absolute

13    litigation privilege "serves broad goals of guaranteeing access to the judicial process,

14    promoting the zealous representation by counsel of their clients, and reinforcing the

15    traditional function of the trial as the engine for the determination of truth." *Flatley*, 39

16    Cal. 4th at 324 (holding that the litigation privilege applies to some forms of unlawful

17    litigation-related activity). Hence, "[a]ny doubt about whether the privilege applies is

18    resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002).

19     "Because the litigation privilege protects only publications and communications, a

20    threshold issue in determining the applicability of the privilege is whether the defendant's

21    conduct was communicative or noncommunicative." *Rusheen*, 37 Cal. 4th at 1058 (citation

22    and quotations omitted). In other words, "the key in determining whether the privilege

23    applies is whether the injury allegedly resulted from an act that was communicative in its

24    essential nature." *Id.*

25     Here, all of Defendants' Communications alleged in the FAC are communicative in

26    nature: filing the Holdheim Lawsuit and Joiner Lawsuit; sending the Lakestar Letter,

27    Insight Letter, and Padilla Letter; serving the Carta Subpoena and Insight Subpoena;

28    misstating Utah law to threaten Plaintiff with litigation; threatening counsel with initiating

administrative proceedings; instructing Joiner and his wife to record privileged discussions;[4] and citing the WSJ article in various litigation filings.[5] *See* (FAC ¶¶ 7–27). Accordingly, the Court next considers whether Defendants' Communications fall under California's litigation privilege.

Additionally, Defendants' Communications undoubtedly were made in judicial proceedings by participants authorized by law. *See Rusheen*, 37 Cal. 4th at 1058. Each communication was made by Mr. Kaufman in connection with his legal representation of various clients in lawsuits, or prospective lawsuits, brought against Plaintiff in state court.

Further, each of Defendants' Communications is connected to and furthers the objects of the underlying litigation for which the communication was made. Specifically, the litigation privilege clearly applies to Defendants' filing and pursuit of both the Holdheim Lawsuit and Joiner Lawsuit. *See* (FAC ¶¶ 7, 17, 19); *Intermarketing Media, LLC v. Barlow*, No. 8:20-CV-00889-JLS (DFMx), 2021 WL 5990190, at *6 (C.D. Cal.

---

[4] Plaintiff alleges that Defendants "unethically instruct[ed] Joshua Joiner and his wife to record or take notes on protected attorney-client privileged discussions after Defendants met with Joiner and established an improper attorney-client relationship." (FAC ¶ 7). Plaintiff further alleges that the "Joiner Meeting was unethical and improper because while an attorney may communicate with non-party adverse witnesses without notification or consent of the other party's lawyer, the Joiner Meeting concerns attorney-client privileged information as asserted by both Joiner and Kaufman during Joiner's first deposition. The Joiner Meeting with counsel was in the State of California, which required dual consent. Upon information and belief, Joiner and/or his wife illegally recorded the attorney-client call and then proceeded to transcribe the call in notes." (FAC ¶ 24). It is unclear what actions, if any, Defendants took aside from allegedly instructing Joiner to take notes. Based on the facts alleged, the Court finds that Defendants' instruction was communicative in nature.

[5] Plaintiff also alleges Defendants instigated publishing the WSJ Article based on "the wording used, the context and the timing of the WSJ Article," and the appearance to Plaintiff that the sources of the article "are mostly made up of ex-employees" represented by Defendants. (FAC ¶ 12). As alleged, there is no basis to find that Defendants' "instigating" of the WSJ Article involved any communication by Defendants. Accordingly, the litigation privilege does not apply to Defendants' "instigating" the WSJ article.

May 4, 2021) ("The filing of civil complaints . . . fall[s] within the heart of conduct protected by the litigation privilege") (citing *Rusheen*, 37 Cal. 4th at 1058 ("The pleadings and process in a [civil] case are generally viewed as privileged communications.")). Similarly, the litigation privilege applies to the Carta Subpoena and Insight Subpoena. *See* (FAC ¶ 7, Ex. 3, Ex. 6); *Blaha v. Rightscorp, Inc.*, No. CV 14–9032 DSF (JCGx), 2015 WL 4776888, at *3 (C.D. Cal. May 8, 2015) (applying the litigation privilege to claims that a defendant "obtained (and served) the subpoenas knowing that the subpoenas were improper under the law"). Additionally, Defendants' citing of the WSJ Article in various litigation filings falls under the litigation privilege because such conduct furthers the object of litigation. *See* (FAC ¶ 16).

The litigation privilege also applies to the Insight Letter and Padilla Letter. The Insight Letter consists of litigation-related correspondence between opposing counsel in the Joiner Lawsuit and furthers the object of the Joiner Lawsuit. (FAC ¶ 7, Ex. 5). The Padilla Letter consists of Defendants' response to a cease and desist demand sent from Plaintiff to Angel Padilla. *See* (FAC ¶¶ 7, 23, Ex. 4); *Canaday v. Peoples-Perry*, No. 17-CV-05602-JSC, 2017 WL 6405618, at *5 (N.D. Cal. Dec. 15, 2017) ("A response to a legal demand letter from counsel is indisputably connected with anticipated litigation and falls squarely within the litigation privilege.").

In addition, the Court finds that the litigation privilege applies to the Lakestar Letter. The letter meets the "extremely liberal test of having 'some connection or logical relation' to this action." *Chaffey Joint Union High Sch. Dist. v. Fieldturf USA, Inc.*, No. EDCV 16-204-JGB-DTBX, 2016 WL 11674265, at *3 (C.D. Cal. May 19, 2016) (quoting *Rusheen*, 37 Cal. 4th at 1057). On October 5, 2021, Defendants informed Lakestar, a Switzerland-based company that, according to the Lakestar Letter, invested roughly $15 million dollars in Plaintiff, of various allegations made against Plaintiff, including details from the Joiner Lawsuit and Holdheim lawsuit, media inquiries regarding Plaintiff, and the contents of the WSJ Article. (FAC ¶¶ 7, 20, Ex. 2). In exchange for the information, Defendants requested "documents like the 'slide decks' given to Lakestar" which Defendants stated Plaintiff was

"refus[ing] to turn over despite a lawful court order."  (*Id.*)  Defendants noted that while Lakestar is "beyond the subpoena power of the California courts," Defendants may seek a court order for permission to subpoena the company.  However, "[i]n lieu of jumping through such hoops," Defendants requested that Lakestar voluntarily produce the investor slide deck that Plaintiff shared with Lakestar in 2018.  *See* (*id.*; Kaufman Decl. ¶ 28).  Defendants explained that the decks were ordered to be produced in the Joiner Lawsuit, but Plaintiff had not produced them to date.  (*Id.*)

Moreover, the fact that Defendants sent the Lakestar Letter to a nonparty does not prevent applying the litigation privilege.  Indeed, courts regularly extend California's litigation privilege to communications sent to nonparties if they possess a "substantial interest in the outcome of the litigation."  *See Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (quoting *Costa v. Superior Court*, 157 Cal. App. 3d 673, 678 (1984)).  For example, in *Sliding Door Co. v. KLS Doors, LLC*, defendant sent emails with "information regarding the litigation that informs customers of the pending litigation and warn[ing] them that they can be liable for purchasing any infringing product."  No. EDCV 13–00196 JGB (DTBx), 2013 WL 2090298, at *2, 5 (C.D. Cal. May 1, 2013).  The court found that the communication fell within the litigation privilege because "it has a logical relation to the action and achieves the object of the litigation."  *Id.* at *8; *see also Fisher Tooling Co. v. Gillet Outilliage*, No. CV 04-7550 ABC (MCX), 2005 WL 8165667, at *5 (C.D. Cal. Mar. 28, 2005) ("The absolute litigation privilege applies when a plaintiff in a pending litigation sends a lawsuit notification or cease and desist letter to third parties regarding the defendant's alleged infringing activity" even if the letters convey opinions about the merits of the pending litigation); *eCash Techs., Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1082 (C.D. Cal. 2000) (finding that "a communication merely informing a third party of the *pendency* of this litigation must clearly fall within the privilege") (emphasis in original).

Here, given Lakestar's roughly $15 million dollar investment in Plaintiff and the ongoing litigations against Plaintiff, which could negatively affect Plaintiff's business and,

in turn, Lakestar's investment in Plaintiff, the Court finds Lakestar had an interest in the outcome of the various litigations that was "substantial" to warrant the litigation privilege applying to the Lakestar Letter. *See Sharper Image Corp.*, 425 F. Supp. 2d at 1079 (finding the litigation privilege applied to letters an air purifier manufacturer sent to specific media who advertised a competing product advising the media of a patent and trade dress lawsuit even though the media's interest in the underlying suit was not as substantial as the retailers who sold the competing product because the media faced a potential disruption in their business if the court granted injunctive relief in the underlying suit).

The litigation privilege applies as well to Plaintiff's allegation that Defendants "misquoted and misused Utah law to attempt to obtain confidential information of EAI and to threaten EAI and its employees with administrative and/or civil actions." *See* (FAC ¶ 23); *Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 815 (2015) (holding that the litigation privilege applied to claims "based on allegations that defendants solicited and used confidential information for the purpose of filing various actions against plaintiffs."). Additionally, the litigation privilege applies to Defendants' alleged instruction of Joiner and his wife to record privileged discussions. The alleged unlawful instruction occurred in advance of Joiner's meeting with Plaintiff's corporate counsel to discuss Joiner's upcoming deposition in the Joiner Lawsuit. (Kaufman Decl. ¶¶ 36-37). Therefore, regardless of whether Defendants' instruction was lawful, it falls within the litigation privilege because it was made in connection with the underlying action. *See Flatley*, 39 Cal. 4th at 324 (holding that the litigation privilege applies to some forms of unlawful litigation-related activity).

Lastly, Plaintiff alleges that during Mr. Joiner's deposition in the Joiner Lawsuit, "Defendants further threatened [Plaintiff's] counsel with an administrative action in an attempt to gain an advantage in a civil dispute." (FAC ¶ 25). It is unclear what exactly Plaintiff alleges occurred during the deposition. Nevertheless, the Court finds that Defendants' statement during the Joiner deposition to gain an advantage in a civil dispute

was logically related to the underlying action and was made to further the object of the litigation.

        b)    *The WSJ Article*

     Defendants' alleged "instigating" of the WSJ Article is the only factual allegation not protected by California's litigation privilege because such conduct neither took place in judicial or quasi-judicial proceedings nor appears to be logically related to the underlying action. Therefore, the Court must determine whether Plaintiff is likely to prevail on any of Plaintiff's four claims for defamation, business disparagement, intentional interference with contract, and intentional interference with prospective advantage based on Defendants' "instigating" of the WSJ article alone.

     To state a claim for defamation under California law, Plaintiff must show that Defendants made "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). Moreover, to support a claim for defamation, Plaintiff must establish that Defendants played a 'responsible part' in the publication of a defamatory matter. *See Matson v. Dvorak*, 40 Cal. App. 4th 539, 549 (1995); *Abir Cohen Treyzon Salo, LLP v. Lahiji*, 40 Cal. App. 5th 882, 889 (2019) ("the plaintiff must establish that the person sued is the one legally responsible for the tort").

     To prove business disparagement under California law, "a claimant must show that (1) the accused party made a statement disparaging the claimant's product, (2) the disparaging statement was couched as fact and not opinion, (3) the statement was false, (4) the statement was made with malice, and (5) the statement caused monetary loss." *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, No. 2:11-CV-02389-MRP-SS, 2014 WL 12577150, at *2 (C.D. Cal. Feb. 24, 2014) (citation omitted). A claim for business disparagement equates to a claim for trade libel because "trade libel 'encompasses all false or misleading statements concerning the quality of services or product of a business which are intended to cause the business financial harm and do so.'" *Id.* (quoting *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010 (2001)).

The tort of intentional interference with contract requires allegations of the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007) (quoting *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998)).

The elements of a claim for intentional interference with prospective advantage under California law are: "(1) an economic relationship with a third party which offered the probability of future economic benefit to plaintiff; (2) defendants' knowledge of this relationship; (3) defendants' intentional acts designed to disrupt that relationship; (4) actual disruption of the relationship; and (5) economic harm . . . proximately caused by defendants' acts." *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1012 (N.D. Cal. 2015) (internal quotation marks omitted). The plaintiff "must show that the defendant engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Nautilus Ins. Co. v. Access Med., LLC*, 780 F. App'x 457, 459 (9th Cir. 2019) (internal quotation marks omitted).

Here, Plaintiff has not alleged that Defendants played a "responsible part" in publishing any statements related to the WSJ Article, made or published any statement in connection with the WSJ Article, or otherwise engaged in an intentional act of any kind that caused Plaintiff harm. Instead, as it pertains to Defendants' role in the WSJ Article, Plaintiff alleges only that "it is clear from the wording used, the context and the timing of the WSJ Article it appears that they are mostly made up of ex-employees" represented by Defendants. (FAC ¶ 12). Based on those allegations alone, the Court cannot infer that Defendants had anything to do with the publication of the WSJ Article. *See also* (Kaufman Decl. ¶¶ 21-22). Accordingly, Plaintiff has not met its burden to show that it is likely to succeed on the merits for any of its four claims, insofar as those claims are based on Defendants' allegedly instigating the WSJ Article.

### 2.   The Remaining *Winter* Factors

Absent a showing that Plaintiff is likely to succeed on the merits, the Court need not reach the other *Winter* factors. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (holding that *Winter* "requires the plaintiff to make a showing on all four prongs"); *Chaffey Joint Union High Sch. Dist. v. Fieldturf USA, Inc*., No. EDCV 16-204-JGB-DTBx, 2016 WL 11674265, at *4 (C.D. Cal. May 19, 2016) (denying preliminary injunction after finding California's litigation privilege barred the plaintiff's claims). Nevertheless, the Court notes that Plaintiff has not shown it is likely to suffer irreparable harm if a preliminary injunction is not granted. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Given Plaintiff's failure to allege any actionable theory based on non-privileged conduct, the Court cannot conclude that, absent an injunction, Plaintiff will likely suffer irreparable harm.

### C.   Plaintiff's Request to Cross-Examine Declarant

On August 24, 2022, Plaintiff filed a request to cross-examine declarant Barry Kaufman in connection with its motion for a preliminary injunction pursuant to Local Rule 7-8. (ECF No. 36). Plaintiff did not include any basis for its request. (*Id*.). On August 26, 2022, Defendant timely objected. (ECF No. 37). The Court denies Plaintiff's request for two reasons. First, "courts rarely allow oral testimony on motions." *SEC v. Gold Standard Mining Corp*., No. CV 12–05662 JGB (CWx), 2013 WL 12142371, at *5 (C.D. Cal. May 15, 2013). Second, Plaintiff provided zero basis for its request to cross-examine Mr. Kaufman. *See Reddy v. Mediscribes, Inc*., Case No. EDCV 19-1677 JGB (SPx), 2020 U.S. Dist. LEXIS 82923, at *3 n.3 (C.D. Cal. Feb. 4, 2020) (denying request to cross-examine because the plaintiff provided no specific grounds for the request); *Marks v. Bridgestone Ams., Inc*., Case No. 2:15-CV-05153-CAS-RAO, 2015 U.S. Dist. LEXIS 141938, at *7 (C.D. Cal. Oct. 16, 2015) (denying request for cross-examination where plaintiff "has not articulated why cross-examination of the aforementioned declarants is necessary to establishing an 'issue of fact' related to the instant motion . . . .").

1   **III.   DEFENDANTS' MOTION TO STRIKE**

2        **A.    Legal Standard**

3            California's anti-SLAPP statute, codified at California Code of Civil Procedure

4   section 425.16, allows a defendant to file a special motion to strike a complaint that is

5   brought primarily to chill the valid exercise of free speech.  Such motions may be brought

6   in federal court against a plaintiff's state law claims.  *U.S. ex rel. Newsham v. Lockheed*

7   *Missiles & Space Co., Inc.*, 190 F.3d 963, 970-73 (9th Cir. 1999).  Section 425.16 involves

8   a two-step inquiry.  First, the "moving defendant must make a prima facie showing that the

9   plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to

10  free speech."  *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013).  "When

11  relief is sought based on allegations of both protected and unprotected activity, the

12  unprotected activity is disregarded at this stage."  *Baral v. Schnitt*, 1 Cal. 5th 376, 396

13  (2016).  Only "[i]f the court determines that relief is sought based on allegations arising

14  from activity protected by the statute" is the second step reached.  *Id*.  Second, if the

15  defendant satisfies the first requirement, "the burden then shifts to the plaintiff to establish

16  a reasonable probability that it will prevail on its claim in order for that claim to survive

17  dismissal."  *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021) (internal

18  quotation omitted, cleaned up).  If the plaintiff fails to meet its burden at the second step,

19  the claim based on the protected activity is stricken and "[a]llegations of protected activity

20  supporting the stricken claim are eliminated from the complaint, unless they also support

21  a distinct claim on which the plaintiff has shown a probability of prevailing."  *Baral*, 1 Cal.

22  5th at 396.

23          California's anti-SLAPP statute is designed "to allow for early dismissal of meritless

24  [F]irst [A]mendment cases aimed at chilling expression through costly, time-consuming

25  litigation."  *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017).  To achieve

26  this purpose, courts are directed to "construe[ ]" the anti-SLAPP statute "broadly."  Cal.

27  Civ. Proc. Code § 425.16(a).  Indeed, courts have held that, "under the statutory scheme, a

28  court must generally presume the validity of the claimed constitutional right in the first

step of the anti–SLAPP analysis ....” *Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1089 (2001).  And because the statutory intent is to provide a quick, inexpensive method of dismissing these sorts of lawsuits, leave to amend generally is improper.  *Simmons v. Allstate Ins*. Co., 92 Cal. App. 4th 1068, 1073 (2001).

If the anti-SLAPP motion “challenges only the legal sufficiency of a claim, a district court should apply the Rule 12(b)(6) standard and consider whether a claim is properly stated.”  *Planned Parenthood Fed’n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).  The court must grant the defendant’s motion and dismiss the complaint if the “plaintiff presents an insufficient legal basis for the claims or no reasonable jury could find for the plaintiff.”  *Herring Networks*, 8 F.4th at 1155 (internal quotation omitted).  Moreover, in evaluating a Rule 12(b)(6) motion, the court considers the complaint as well as “material which is properly submitted as part of the complaint,” which means the documents are either “physically attached to the complaint” or the “complaint necessarily relies” on them and their authenticity is not contested.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

### B.    Analysis

The Court considers each step of the anti-SLAPP test.

#### 1.    Whether the State Law Claims Concern Protected Activity

To meet their burden on an anti-SLAPP motion, Defendants must show that the acts underlying Plaintiff’s claims fall within one of the four enumerated categories of § 425.16(e).  These categories are: “(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the

constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e).

Defendants argue that all of Plaintiff's allegations qualify as protected activity because they are either related to litigation or involve a matter of public interest. (Strike Motion at 15). In response, Plaintiff argues only that Defendants' actions "are not protected because they were not taken in connection with any public issue, nor an issue of public interest." (Strike Opp. at 3). Plaintiff does not address whether the relevant communications are protected litigation activity. For the reasons stated below, the Court finds that all of Defendants' Communications are protected activity apart from Defendants' alleged instigation of the WSJ Article.

a)   *Conduct Related to Litigation*

The anti-SLAPP statute applies to claims "arising from" a defendant's litigation activity. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006); Cal. Civ. Proc. Code § 425.16(e) (act in furtherance of person's right to petition in connection with public issues include "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body"). "Any such act includes communicative conduct such as the filing, funding, and prosecution of a civil action. This includes qualifying acts committed by attorneys in representing clients in litigation." *Rusheen*, 37 Cal. 4th at 1056; *see also Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1261 (2008) ("[S]tatements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest."). The "critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002) (emphasis in original).

As a preliminary matter, Plaintiff is mistaken that the communications must relate to a public issue to be protected by the anti-SLAPP statute. The California Supreme Court has held that section 425.16, subdivisions (e)(1) and (2), which protect statements made before, or in connection with, an issue before an official proceeding, does *not*

require that the statements concern an issue of public significance. *Flatley*, 39 Cal. 4th at 323 (2006) (citing *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106 (1999)). The court recognized that "imposing a 'public issue' requirement as a condition to protecting litigation-related communications under the anti-SLAPP statute would produce an anomalous result." *Id.* (internal citation omitted). Thus, Defendants' Communications need only arise from Defendants' litigation activity to be protected by the anti-SLAPP statute.

Here, for many of the reasons articulated above in the Court's discussion of California's litigation privilege,[6] the Court finds that all of Defendants' Communications, except for Plaintiff's allegation that Defendants instigated the WSJ Article, arise out of Defendants' considering, filing, or furthering litigation. "In reality, it seems [Defendants] are being sued for representing their clients"; a result foreclosed by California's anti-SLAPP Statute. *See Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 210 (2015); *Cabral v. Martins*, 177 Cal. App. 4th 471, 480 (2009) ("[A]ll communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute."). As such, the Court finds that Defendants' Communications, aside from Defendants' alleged instigation of the WSJ Article, are protected by section 425.16.

> b)   *Public Interest*

The issue remains whether Plaintiff's allegation that Defendants instigated the WSJ Article arises from protected activity. To be protected, a defendant "must make a prima facie showing that the plaintiff's suit *arises from an act in furtherance* of the defendant's constitutional right to free speech." *Makaeff*, 715 F.3d at 261 (emphasis added). For an

---

[6] *See Inga v. Innovative Sports Mgmt.*, No. 2:21-cv-04146-RGK-SHK, 2021 WL 6536668, at *3 (C.D. Cal. Oct. 19, 2021) ("The litigation privilege has been used to determine whether a defendant has met the first part of the two-step anti-SLAPP inquiry under 426.16(e)(1) and (2).") (citing *Flatley*, 39 Cal. 4th at 322-23).

act to further a constitutional right to free speech, it must *at least* be communicative in nature. *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010).

Defendants argue that the allegation involves communications that concern a matter of public interest. (Strike Motion at 16). However, Defendants have not shown that they engaged in any communicative activity regarding the WSJ Article. To the contrary, Defendants assert that "Kaufman did not communicate with the Wall Street Journal and was not a source of material for that article." *See* (Strike Motion at 12; Kaufman Decl. ¶¶ 19, 21, 22). Accordingly, Defendants alleged instigation of the WSJ Article, or lack thereof, is not an act in furtherance of Defendants' right to free speech, and therefore is not protected by the anti-SLAPP statute.

### 2.   Probability of Prevailing on the Merits

"[I]n cases involving allegations of both protected and unprotected activity, the plaintiff is required to establish a probability of prevailing on any claim for relief based on allegations of protected activity." *Baral*, 1 Cal. 5th at 395. The unprotected activity is disregarded. *Id*. at 396. To show a probability of prevailing on the challenged claims, Plaintiff must demonstrate "only a minimum level of legal sufficiency and triability." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) (internal quotation omitted).

The Court incorporates its analysis from above and reiterates that Plaintiff has not met its burden to demonstrate even a minimum level of legal sufficiency for any of its four claims. That is because Plaintiff's claims based on Defendants' Communications are barred as a matter of law by California's litigation privilege. *See Flatley*, 39 Cal. 4th at 323 ("The litigation privilege is . . . relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing."). Accordingly, the Court finds that Plaintiff has not met its burden to demonstrate it can prevail on any of its four claims, each of which is based almost entirely on allegations of protected activity.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's request for a preliminary injunction and **GRANTS** Defendants' motion to strike the portions of the FAC based on protected activity.  Plaintiff is granted leave to amend and file a new complaint omitting the stricken material no later than fourteen (14) days from the date of this Order (September 23, 2022).  Finally, because the Court grants the motion to strike, Defendants may file a motion for attorney's fees and costs no later than September 30, 2022.  *See* Cal. Civ. Proc. Code § 425.16(c)(1) (If the movant prevails on a special motion to strike, it is "entitled to recover [its] attorney's fees and costs").

**IT IS SO ORDERED.**

DATED:    September 9, 2022

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

-19-