KENNETH C. FELDMAN, SB# 130699
   E-Mail: Ken.Feldman@lewisbrisbois.com
DAVID D. SAMANI, SB# 280179
   E-Mail: David.Samani@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Barry B. Kaufman and Law Offices Of Barry B. Kaufman

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ENGINEER.AI CORPORATION d/b/a BUILDER.AI, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BARRY B. KAUFMAN, an individual, and LAW OFFICES OF BARRY B. KAUFMAN, a California professional corporation,<br><br>Defendants. | Case No. 2:22-cv-03552-SPG-KSx<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>Date:  November 30, 2022<br>Time:  1:30 p.m.<br>Crtrm.: 5C<br><br>Judge:  Hon. Sherilyn Peace Garnett<br><br>Action Filed:  May 25, 2022<br>Trial Date:    None Set |

4864-0757-7405.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Motion for Reconsideration is both procedurally and substantively meritless. Procedurally, Plaintiff's motion fails to satisfy one of Local Rule 7-18's exclusive grounds for reconsideration.

Although Plaintiff frames its motion as being based on the Court's supposed "manifest failure to consider material facts," this is visibly untrue. The Court *expressly* considered the "material facts" Plaintiff now cites. Plaintiff just does not like the Court's analysis. That, however, is not a viable basis for reconsideration.

Substantively, Plaintiff's motion fails because the Court's initial analysis is unquestionably correct. The litigation privilege encompasses communications that bear some relation to litigation, and it is well-settled this includes communications sent to third parties so long as there is some logical connection to litigation. As set forth below, the Lakestar Letter plainly qualifies, as the Court found.

Accordingly, Defendants respectfully urge the Court to deny Plaintiff's Motion for Reconsideration.

## II. PLAINTIFF'S MOTION FOR RECONSIDERATION IS PROCEDURALLY AND SUBSTANTIVELY IMPROPER

### A. Relevant Standards

Under Local Rule 7-18, a motion for reconsideration may be made only on the following grounds:

> (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered; (b) the emergence of new material facts or a change of law occurring after the Order was entered; or (c) a manifest

1

Case No. 2:22-cv-03552-SPG-KSx
OPPOSITION TO MTN FOR RECONSIDERATION

> showing of a failure to consider material facts presented to the Court before the Order was entered. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

"'[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). A motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

A party moving for reconsideration "bears the burden of proving that reconsideration is proper." *White v. Seabrooks*, Case No. CV 21-8528-MWF (JEMx), 2022 U.S. Dist. LEXIS 91643 at *2-3 (C.D. Cal. Feb. 24, 2022). "Courts in this district have interpreted Local Rule 7-18 to be coextensive with Rules 59(e) and 60(b)." *Id.* at *3.

### B. Plaintiff's Motion Is Procedurally Invalid Because There Is No "Manifest Failure To Consider Material Fact"

Plaintiff premises its motion on a supposed "failure to consider a material fact," which, according to Plaintiff, is that Lakestar is a passive investor of Plaintiff that was never directly a party to any of the underlying lawsuits. (See Motion at 3:2-7.)

But these are not facts that the Court "fail[ed] to consider." On the contrary, the Court ***expressly contemplated*** these facts when it (correctly) found the litigation privilege applicable. For instance, the Court's September 9, 2022 ruling first specifically acknowledged Lakestar as "Plaintiff's investor . . . ." (See Dkt. No. 39 at

20:20-21.)  Furthermore, the Court's ruling provides:

> In addition, the Court finds that the litigation privilege applies to the Lakestar Letter.  The letter meets the 'extremely liberal test of having 'some connection or logical relation' to this action.' *Chaffey Joint Union High Sch. Dist. v. Fieldturf USA, Inc.*, No. EDCV 16-204-JGB-DTBX, 2016 WL 11674265, at *3 (C.D. Cal. May 19, 2016) (quoting *Rusheen*, 37 Cal. 4th at 1057).  On October 5, 2021, Defendants informed Lakestar, a Switzerland- based company that, according to the Lakestar Letter, invested roughly $15 million dollars in Plaintiff, of various allegations made against Plaintiff, including details from the Joiner Lawsuit and Holdheim lawsuit, media inquiries regarding Plaintiff, and the contents of the WSJ Article. (FAC ¶¶ 7, 20, Ex. 2).  In exchange for the information, Defendants requested 'documents like the "slide decks" given to Lakestar' which Defendants stated Plaintiff was "refus[ing] to turn over despite a lawful court order.' (*Id.*)  Defendants noted that while Lakestar is 'beyond the subpoena power of the California courts,' Defendants may seek a court order for permission to subpoena the company. However, '[i]n lieu of jumping through such hoops,' Defendants requested that Lakestar voluntarily produce the investor slide deck that Plaintiff shared with Lakestar in 2018.  See (*id.*; Kaufman Decl. ¶ 28). Defendants explained that the decks were ordered to be produced in the Joiner Lawsuit, but Plaintiff had not produced them to date. (*Id.*)

(Dkt. No. 39 at 8:19-9:7.)

Finally, the Court engaged in a far more comprehensive and fulsome analysis than Plaintiff's motion for reconsideration suggests, continuing to find:

> [T]he fact that Defendants sent the Lakestar Letter to a nonparty does not prevent applying the litigation privilege. Indeed, courts regularly extend California's litigation privilege to communications sent to nonparties if they possess a "substantial interest in the outcome of the litigation." *See Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (quoting *Costa v. Superior Court*, 157 Cal. App. 3d 673, 678 (1984)). For example, in *Sliding Door Co. v. KLS Doors, LLC*, defendant sent emails with 'information regarding the litigation that informs customers of the pending litigation and warn[ing] them that they can be liable for purchasing any infringing product.' No. EDCV 13–00196 JGB (DTBx), 2013 WL 2090298, at *2, 5 (C.D. Cal. May 1, 2013). The court found that the communication fell within the litigation privilege because "it has a logical relation to the action and achieves the object of the litigation." *Id.* at *8; see also *Fisher Tooling Co. v. Gillet Outilliage*, No. CV 04-7550 ABC (MCX), 2005 WL 8165667, at *5 (C.D. Cal. Mar. 28, 2005) ("The absolute litigation privilege applies when a plaintiff in a pending litigation sends a lawsuit notification or cease and desist letter to third parties regarding the defendant's alleged infringing activity" even if the letters convey opinions about the merits of the pending litigation); *eCash Techs., Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1082 (C.D. Cal. 2000) (finding that "a communication merely

> informing a third party of the pendency of this litigation must clearly fall within the privilege") (emphasis in original).
>
> Here, given Lakestar's roughly $15 million dollar investment in Plaintiff and the ongoing litigations against Plaintiff, which could negatively affect Plaintiff's business and, in turn, Lakestar's investment in Plaintiff, the Court finds Lakestar had an interest in the outcome of the various litigations that was "substantial" to warrant the litigation privilege applying to the Lakestar Letter. See *Sharper Image Corp.*, 425 F. Supp. 2d at 1079 (finding the litigation privilege applied to letters an air purifier manufacturer sent to specific media who advertised a competing product advising the media of a patent and trade dress lawsuit even though the media's interest in the underlying suit was not as substantial as the retailers who sold the competing product because the media faced a potential disruption in their business if the court granted injunctive relief in the underlying suit).

(Dkt. No. 9:8-10:8).

Consequently, the Court did not "miss" any key fact. Rather, the Court expressly considered Lakestar's role as a passive investor, before correctly concluding that the litigation privilege bars Plaintiff's claims based on the Lakestar Letter because the letter bears a logical relation to some litigation.

The bottom line is that Plaintiff does not *like* the Court's ruling. But that is *not* a basis for reconsideration. "'Unhappiness with the outcome is not included within the rule; unless the moving party shows that one of the stated grounds for reconsideration exists, the Court will not grant a reconsideration.'" *White*, 2022 U.S.

Dist. LEXIS 91643 at * 3 (quoting *Gish v. Newsom*, No. EDCV 20-755-JGB (KKx), 2020 U.S. Dist. LEXIS 192714, 2020 WL 6054912, at *2 (C.D. Cal. Oct. 9, 2020)).

Consequently, Defendants respectfully request the Court deny Plaintiff's Motion for Reconsideration outright, for failing to meet the procedural requirements of Local Rule 7-18.

### C. Plaintiff's Request Is Substantively Flawed Because The Litigation Privilege Bars

Setting aside the fatal procedural flaw, Plaintiffs' motion for reconsideration fails for a separate reason: the Court's initial analysis is correct. Plaintiff's motion is based entirely on the premise that Lakestar "never had any involvement in, interest in, or potential liability from any of Defendants' (or its clients") various litigation campaigns against Plaintiff." (Mtn. at 3:2-4.)

But this "point" is neither here nor there, because as the Court expressly recognized, the litigation privilege applies to communicative conduct that has "some connection or logical relation" to litigation. (See Dkt. No. 39 at 8:20-21; *see also Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993) ("For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47 (b)."); accord *Sliding Door Co. v. KLS Doors*, Case No. EDCV 13-0016 (JGB (DTBx), 2013 U.S. Dist. LEXIS 71304 at *21-22, 2013 WL 209028 (C.D. Cal. May 1, 2013). Likewise, as the Court correctly recognizes, this principle readily extends to communications to third parties. (*eCash Techs, Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1152 (C.D. Cal. 2000) ("[A] communication merely informing a third party of the pendency of this litigation must clearly fall within the privilege.").[1]

---

[1] Not surprisingly, Plaintiff does not attempt to distinguish *eCash Techs, Inc.* or *Fisher Tooling Co. v. Gillet Outilliage*, Case No. CV 04-7550 ABC (MCX), 2005 (footnote continued)

Here, the Lakestar Letter plainly fits the bill. As the Court recognizes in its detailed examination, the letter itself involves an attempt to obtain information Defendants viewed as relevant to ongoing litigation, as a precursor to potentially costly litigation efforts. (See FAC, Exh. 2.) Furthermore, the letter notes that Lakestar, as an investor in Plaintiff, may have an interest (potentially, a very negative one) in the outcome of litigation against Plaintiff as it could impact Lakestar's investment. (*Id.*)

First, even setting aside the letter's direct tie to litigation as a means to obtain potentially relevant information, as the Court recognized it is well-settled that letters to third parties that provide warnings of potential wrongdoing of a business partner are subject to the litigation privilege. For instance, in *Neville v. Chudacoff*, 160 Cal. App. 4th 1255 (Ct. App. 2008), the plaintiff brought a defamation claim against an attorney relating to the attorney's preparation of a letter which claimed that the plaintiff had violated his employment and confidentiality agreement by competing with his former employer (Maxsecurity). The letter was sent to potential customers of plaintiff, warning that they should avoid doing business with him pending the resolution of a threatened litigation between plaintiff and Maxsecurity. (160 Cal.App.4th at 1259-60.)

The Court of Appeal, affirming the granting of an anti-SLAPP motion, held that the litigation privilege applied to preclude the plaintiff's claims:

> The Letter related directly to Maxsecurity's claims for breach of contract and misappropriation of trade secrets against Neville. Neville was alleged to have misappropriated Maxsecurity's customer lists. The Letter was directed to Maxsecurity's current and former

---

WL 8165667, two additional cases the Court cites in its ruling. (See Dkt. No. 39 at 9:18-26.)

> customers—persons whom Maxsecurity reasonably could believe had an interest in the dispute as potential witnesses to, or unwitting participants in, Neville's alleged misconduct. The Letter constituted an attempt to prevent further misuse of Maxsecurity's proprietary information, and thereby mitigate Maxsecurity's potential damage.

*Id.* at 1267-68; see also *Healy v. Tuscany Hills Landscape & Recreation Corp.*, 137 Cal. App. 4th 1, 5-6 (holding letter sent by attorney for homeowners' association to members of association regarding litigation with plaintiff was privileged).

Finally, it bears mentioning that Plaintiff's Motion for Reconsideration's attempt to distinguish *Sharper Image Corp. v. Target Corp.* 425 F. Supp. 2d 1056 (N.D. Cal. 2006) ("*Sharper Image*") is misleading. Plaintiff asserts that the letter in *Sharper Image* was subject to the litigation privilege because it warned of "potential liability." (Mtn at 2:26-3:1.) But this is only half the story.

At issue in *Sharper Image* were e-mails the plaintiff sent to retailers of the defendant advising the defendant's retailers of ongoing litigation between the plaintiff and defendant. 425 F. Supp. 2d at 1075. The e-mails warned of "serious legal consequences we expect the distributors of the [defendant]'s product" to experience, and asked that the retailers no longer carry the defendant's at-issue production. *Id.*

The *Sharper Image* court concluded that, *even if the threats to sue the retailers* were discounted, the communication was still privileged because the retailers "possessed a substantial interest in the outcome of the litigation." *Id.* at 1078-1079. As the court noted:

> Even if Plaintiff's threats against them were not serious, the retailer and media recipients possessed a substantial interest in the underlying dispute. At that time, Plaintiff was seeking injunctive relief which, if granted, would have significantly disrupted the recipients' business



4864-0757-7405.1

8

Case No. 2:22-cv-03552-SPG-KSx
OPPOSITION TO MTN FOR RECONSIDERATION

arrangements with Defendants. *Id.* at 1079.

Lakestar's status as an investor in Plaintiff, whose investment and relationship could have been disrupted based on the ongoing litigation, is directly analogous to *Sharper Image Corp.* The Court's analysis is sound, and there is no basis for granting Plaintiff's requested relief.

## III.  CONCLUSION

Plaintiff is not entitled to reconsideration. The Court did not make a manifest failure to consider a material fact. It considered the alleged "material fact," and correctly concluded that the litigation privilege applied. Accordingly, Defendants respectfully urge the Court to deny Plaintiff's Motion for Reconsideration.

DATED: November 9, 2022         LEWIS BRISBOIS BISGAARD & SMITH LLP


By:    /s/ David D. Samani
       DAVID D. SAMANI
       Attorneys for Defendants Barry B.
       Kaufman and Law Offices Of Barry B.
       Kaufman